**ALL AMERICAN AIRWAYS, Inc. et al. v. VILLAGE OF CEDARHURST et al.**

Civ. 12680.

United States District Court
E. D. New York.

July 1, 1952.

522

Fowler Hamilton, New York City, for All American Airways, Inc., et al.

Sidney Goldstein, New York City, for plaintiff, The Port of New York Authority.

Samuel J. Cohen, New York City, for Air Line Pilots Assoc., et al.

James G. Moore, Garden City, N. Y., and Maurice Brandt, New York City, for Village of Cedarhurst, Trustees and Village Counsel.

E. A. Swartz, Floral Park, N. Y., for defendants, as individuals.

Frank J. Parker, U. S. Atty., Brooklyn, N. Y., by George Taylor, Brooklyn, N. Y., for Civil Aeronautics Board and Administrator of Civil Aeronautics, intervening plaintiffs.

RAYFIEL, District Judge.

This is a motion for a preliminary injunction restraining, pendente lite, the enforcement of an ordinance adopted by the Village of Cedarhurst on March 31, 1952, prohibiting, inter alia, the flight of aircraft over that village at an altitude of less than 1000 feet. The action is for a declaratory judgment to the effect that the said ordinance is unconstitutional and invalid.

The parties plaintiff consist of the following:—(1) ten air lines, each of which is engaged, under the authority of the Civil Aeronautical Board, hereinafter referred to as the "Board", as a common carrier of passengers, freight and mail in interstate and/or foreign commerce between the New York International Airport, hereinafter referred to as "Idlewild", and various airports in the United States or foreign countries; (2) the President of the Air Line Pilots Association, International, both as President and as representative of a group of individuals, members of the said association, whose work requires them to pilot aircraft into and out of "Idlewild" from and to various airports in the United States and foreign countries; (3) The Port of New York Authority, hereinafter referred to as the "Port Authority", a body corporate established by compact between the States of New York and New Jersey, for the development and operation of terminal and transportation facilities in the Port of New York District, which includes "Idlewild", which it occupies under lease and operates pursuant to the authority vested in it under statute adopted by the legislatures of both states; (4) ten individuals, each a pilot of one of the ten air lines plaintiffs, and each suing individually and in behalf of others in his class. Each of the said individuals is qualified and has been authorized and licensed to pilot aircraft in interstate and foreign commerce by the Administrator of Civil Aeronautics, hereinafter referred to as the "Administrator".

The "Board" and the "Administrator" have asked for and obtained leave to intervene.

The defendants appeared specially for the purpose of contesting the Court's jurisdiction.

The defendants contend that under the common law title to air space is vested in the owner of the surface soil beneath it. They cite the case of U. S. v. Causby, 328, U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206, to support their position. It is unnecessary to set forth at length the facts involved in that case; it should suffice to say that they and the principle involved are completely

at variance with those in the instant case. It is interesting to note, however, that Mr. Justice Douglas, in his opinion in the Causby case, said, at page 260 of 328 U.S., at page 1065 of 66 S.Ct., 90 L.Ed. 1206, "It is ancient doctrine that at common law ownership of the land extended to the periphery of the universe—Cujus est solum ejus est usque ad coelum. But that doctrine has no place in the modern world. The air is a public highway, as Congress has declared. Were that not true, every transcontinental flight would subject the operator to countless trespass suits. Common sense revolts at the idea. To recognize such private claims to the airspace would clog these highways, seriously interfere with their control and development in the public interest, and transfer into private ownership that to which only the public has a just claim".

The defendants further contend that Congress, in enacting the Civil Aeronautics Act, Title 49 U.S.C.A. § 401, et seq., recognized the private ownership of what defendants' counsel refers to as "superjacent air" when it provided, under section 452 (c) (2) thereof, that the "Administrator" is authorized " * * * to acquire by purchase, condemnation, lease, or otherwise, * * * easements through or other interests in airspace immediately adjacent thereto * * *."

I do not believe that Congress intended that the "Administrator" should be required to condemn or otherwise acquire the airspace adjacent to every plot of land over which planes under its supervision and control would be obliged to fly in landing at or leaving an airport. Even if that were the intent of Congress the remedy of an affected property owner is by an action for damages in the Court of Claims, as was done in the Causby case, supra.

There appear to be three questions to be determined in passing upon the application for a preliminary injunction herein:—

(1) Should the plaintiffs be required to exhaust their remedies in the state courts before having recourse to this Court?

(2) Is there a serious question as to the constitutionality of the aforementioned ordinance?

(3) If there is, would the refusal to grant a preliminary injunction result in irreparable loss and damage to the plaintiffs?

*As to the necessity of exhausting remedies in the state court.*

■ All of the authorities advanced by the defendants to support their contention that the plaintiffs should be relegated to the state courts apply to cases in which state issues were involved in whole or in part.

In the case of Spector Motor Co. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101, the constitutionality of a Connecticut statute imposing a tax on vehicles engaged in interstate and intrastate traffic was involved. The court retained jurisdiction, but directed the plaintiff to proceed in the state court for the determination of its claim involving the tax on intrastate traffic because that was a state issue.

The case of East Coast Lumber Terminal, Inc., v. Town of Babylon, D.C., 81 F.Supp. 701, affirmed 2 Cir., 174 F.2d 106, 8 A.L.R.2d 1219, involved an ordinance providing for the licensing of sand pits and quarries; it was a local ordinance and was not in conflict with any federal law. Judge Galston refused to grant a preliminary injunction, directed the plaintiff to seek equitable relief in the state court under its claim that the local ordinance was unconstitutional and retained the action until the determination of the state issues.

*As to the constitutionality of the Cedarhurst ordinance.*

■ Article 1, section 8, clause 3 of the Constitution of the United States gives to the Congress the power to regulate commerce with foreign countries and with the several states.

Article VI, section 2, provides that the Constitution and the laws which shall be made in pursuance thereof shall be the supreme law of the land anything in the

constitution or laws of any state to the contrary notwithstanding.

Pursuant to the power vested in it by Article 1, section 8, clause 3, of the Constitution, the Congress enacted in 1938 the statute known as the Civil Aeronautics Act, Title 49 U.S.C.A. § 401 et seq., under which it declared a "public right of freedom of transit in air commerce through the navigable airspace", which it defined as the "air space above the minimum altitudes of flight prescribed by regulations issued under" the said act. The "Board", acting under the authority given it by the said act, has issued rules and regulations governing, among other things, the flight operations of aircraft approaching, landing at and leaving "Idlewild", and authorizing and/or directing under certain conditions the maintenance of altitudes of less than 1000 feet over the Village of Cedarhurst. Pursuant to the powers delegated to him by the "Board" under the said Act the "Administrator" has likewise formulated rules, regulations and standards for the guidance and direction of pilots and other employees landing at or leaving the airport.

It appears to me that the aforementioned ordinance adopted by the Village of Cedarhurst on March 31st, 1952, is in many respects in sharp conflict with the statutes of the United States and with the rules and regulations formulated and adopted pursuant thereto.

It appears to me that:

(1) The aforementioned ordinance of March 31, 1952, is in conflict with the Civil Aeronautics Act and many of the rules and regulations formulated and adopted under its authority

(2) The Village of Cedarhurst, in adopting the ordinance, assumed control over air space preempted by the United States of America under the said Act;

(3) The ordinance violates Article 1 section 8, clause 3, and Article VI, section 2, of the Constitution of the United States.

For the foregoing and other reasons it is my opinion that the ordinance is unconstitutional and invalid.

*As to whether the refusal to issue a preliminary injunction would result in irreparable loss or damage to the plaintiffs.*

From the affidavits, pleadings and memoranda submitted in support of and in opposition to the application for injunctive relief, as well as the testimony adduced at the hearing thereon, it appears, among other things:

(1) That upwards of one hundred million dollars has been invested in "Idlewild" by the "Port Authority" the City of New York and the Federal Government in the construction and development of air terminal and transportation facilities.

(2) That the gross operating revenues of "Idlewild" are in excess of three million dollars.

(3) That more than 300 flights are made daily to and from "Idlewild".

(4) That the air lines using its facilities have substantial sums invested in equipment, carry considerably more than half a million passengers and many millions of pounds of foreign and domestic air freight and mail.

(5) That compliance with the ordinance would create great hazards in the operation of aircraft into and out of "Idlewild" and endanger the lives of passengers, members of the crews and residents of the communities surrounding "Idlewild", including Cedarhurst.

(6) That the plaintiff airlines would suffer substantial losses in revenue by the enforcement of the ordinance.

(7) That the members of the plaintiff pilot association would refuse to risk financial loss and possible prison sentences by operating their aircraft in violation of the ordinance, and hence would suffer a substantial loss of income.

(8) That the individual plaintiff pilots and other members of the class which they represent would necessarily be obliged to forego their means of earning a livelihood rather than risk arrest and punishment by violating the ordinance.

For the foregoing reasons, and many others disclosed by the record herein I am satisfied that irreparable loss and damage to their property and property rights would be sustained by all of the plaintiffs for which none of them would have an adequate remedy at law, if the ordinance of March 31, 1952, should remain in force and effect pending the trial and determination of the issues herein.

It is my opinion and I therefore decide that a preliminary injunction should be issued in favor of all the plaintiffs herein, restraining the defendants and each of them, individually and in their respective official capacities from enforcing the ordinance adopted on March 31st, 1952, by the Village of Cedarhurst, respecting the flight of aircraft over that village.

In view of the fact that the temporary stay herein will expire at midnight on Thursday, July 3rd, 1952, I have requested counsel involved to appear in chambers at 11 A.M. on Wednesday, July 2nd, 1952 with proposed orders granting the preliminary injunction.