**ALL AMERICAN AIRWAYS, Inc., et al. v. VILLAGE OF CEDAR-HURST et al.**

No. 121, Docket 22517.

United States Court of Appeals Second Circuit.

Argued Dec. 10, 1952.

Decided Jan. 7, 1953.

James G. Moore, Garden City, N. Y. (Maurice Brandt, Cedarhurst, N. Y., on the brief and Emerson A. Swartz, Garden City, N. Y., on the brief for individual defendants-appellants), for defendants-appellants Village and officials.

Fowler Hamilton, New York City, for plaintiffs-appellees All American Airways, Inc., et al.

Sidney Goldstein, New York City, for plaintiff-appellee Port of New York Authority.

Samuel J. Cohen, New York City (Henry Weiss, New York City, of counsel), for plaintiffs-appellees Air Line Pilots Association International et al.

Watt H. Denison, Jr., and Joseph Lesser, New York City, on the brief, for appellees.

C. Dickerman Williams, Gen. Counsel, U. S. Dept. of Commerce, Washington, D. C. (Newell A. Clapp, Acting Asst. Atty. Gen., Daniel M. Friedman, Sp. Asst. to Atty. Gen., Emory T. Nunneley, Jr., Gen. Counsel, Civil Aeronautics Board, and Richard E. Elwell, Gen. Counsel, Civil Aeronautics Administration, all of Washington, D. C., and Frank J. Parker, U. S. Atty., and George Taylor, Asst. U. S. Atty., both of Brooklyn, N. Y., on the brief), for intervenor-appellee Administrator of Civil Aeronautics.

James L. Highsaw, Jr., Washington, D. C., for intervenor-appellee Civil Aeronautics Board.

Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal from a district court grant of an injunction *pendente lite*, which restrains enforcement of an ordinance of the Village of Cedarhurst prohibiting aircraft, *inter alia*, from flying over the Village at altitudes lower than 1,000 feet until termination of an action seeking injunctive and declaratory relief. The court found the ordinance invalid as conflicting with congressional legislation, and regulations issued pursuant thereto, enacted under its constitutional power to regulate commerce; it held further that enforcement of the ordinance threatened the plaintiffs-appellees with irreparable injury. D.C.E.D.N.Y., 106 F.Supp. 521. This appeal under 28 U.S.C. § 1292(1) asserts that there can be no substantial doubt as to the validity of the ordinance and also that the district court lacked jurisdiction because the plaintiffs had failed to exhaust their remedies in the state courts.

█ The plaintiffs are ten airlines operating out of the New York International Airport, the Idlewild field, together with certain pilots representing themselves and others flying planes out of the airport, and the Port of New York Authority, which leases the land from New York City and maintains the airport. The defendants are the Village of Cedarhurst and its Mayor, Board of Trustees of four, and Attorney, sued both individually and as village officials. The Administrator of Civil Aeronautics and the Civil Aeronautics Board were permitted to intervene as plaintiffs. Although defendants appear to have consented to this intervention originally, they now protest that the intervenors have no standing in court. This, however, is clearly contrary to the express provisions and intent of amended Fed.Rules Civ.Proc. 24(b), 28 U.S.C.A. West India Fruit & S. S. Co. v. Seatrain Lines, 2 Cir., 170 F.2d 775, 778, 779, certiorari dismissed 336 U.S. 908, 69 S.Ct. 514, 93 L.Ed. 1072; Federal Intervention in Private Actions Involving the Public Interest, 65 Harv.L.Rev. 319, 328. Additional authority for the intervention is supplied by 28 U.S.C. § 1345 and 49 U.S.C.A. §§ 647, 648.

Idlewild is now one of the largest airports in the world, serving in more than 300 flights per day some 2,500,000 passengers per year, 800,000 for overseas passage —a number approximately equal to that of passengers using the Port of New York for ocean travel during the year 1952. Its cargo shipments are comparably large, while its property investment, as found by the trial judge, is upwards of one hundred million dollars and its gross operating revenues, in excess of three million dollars. It is situated in the southeastern corner of the Borough of Queens, in the City of New York, and numerous small villages of Nassau County are adjacent. The Village of Cedarhurst, one mile square and with about 6,000 inhabitants, is to the east, approximately 4,000 feet from its east boundary and 9,200 feet from the end of one of its major runways. The approach to this runway is directly over the Village, with the optimum approach altitude, as set by the Administrator and the Board, requiring a descent as low as 518 feet at the Village edge. After the series of unfortunate accidents, one of them resulting in the death of Judge Patterson, had occurred at other airports last year, the Board of Trustees of the Village conducted hearings, and then on March 31, 1952, adopted the disputed ordinance, effective June 15, 1952. The district court granted a stay before the effective date, and then, having received affidavits and taken testimony, granted the preliminary injunction under date of July 2, 1952, restraining all attempts at enforcement of the ordinance pending the determination of this action.

The ordinance adopted contains lengthy recitals taking official notice of "the killing and maiming of residents of municipalities similarly situated with respect to public airports, including Elizabeth," New Jersey, the proximity of the Village to Idlewild, the maintenance by the Port of New York Authority of "turning, maneuvering, approach and transition zones, day and night," the consequent operation of aircraft over the Village at heights ranging from approximately 200 feet to 1,000 feet above the

ground level "without any legislative authority of the United States or of any agency thereof," and finding that the maintenance of these zones and the use thereof by aircraft "constitute a public nuisance, a trespass and a menace to the inhabitants of this Village and to their rights of property." Therefore, for the protection and promotion of the public health, safety, and general welfare of the community the Board of Trustees exercises the police powers vested in it by law to enact in some eight paragraphs that it shall be unlawful for any person to operate any aircraft lower than 1,000 feet over the Village or "within 1,000 feet in any direction of any dwelling in the Village" or "to maintain or use turning, maneuvering, approach or transition zones in the superadjacent air space" or to carry in this space gasoline or other explosive or inflammable material. The ordinance imposes a penalty for each offense of not more than $100; and a violation is denominated "disorderly conduct," and the violator, "a disorderly person." This makes such a person subject under N. Y. Penal Law, McKinney's Consol.Laws, c. 40, § 723 to punishment by "imprisonment in a county jail or workhouse for a term not exceeding six months, or by a fine not exceeding fifty dollars, or by both." The ordinance concludes with a separability clause and a provision for its effective date of June 15, 1952. Plaintiffs assert that defendants plan a vigorous enforcement of the ordinance; and this is not denied, but rather confirmed, by all the pleadings, briefs, and arguments presented by the defendants.

The power of the federal government to regulate aircraft is found in the Civil Aeronautics Act of 1938, 49 U.S.C.A. § 401 et seq., which defines a broad public policy in the promotion of air commerce. This Act confers on the Civil Aeronautics Board the duty of promoting flight safety in air commerce by prescribing and revising air traffic rules, including rules as to safe altitudes of flight and for the prevention of collisions between aircraft. 49 U.S.C.A. § 551(a)(7). The Board may delegate its rule-making power to the Administrator of Civil Aeronautics. 49 U.S.C.A. § 551(c). Pursuant to this authority the Board and the Administrator have promulgated exhaustive air traffic rules, 14 CFR 60.1 et seq., with various provisions as to minimum safe altitudes of flight, the "circling" of aircraft when making instrument approaches to the field, and a "missed-approach procedure," which need not be stated here in detail. For there is no dispute but that these call for lower altitudes over the Village of Cedarhurst than 1,000 feet. Though there is some question whether the flights thus authorized go down to the 162-foot level asserted in one of the affidavits for the defendants, the square conflict between the regulations—if construed, as plaintiffs urge, as blanket authority for flights at the prescribed heights—and the ordinance is admitted by all. Plaintiffs assert that use of this important runway would be made virtually impossible, that this would hamper the airport in all its activities, and, at times when the direction of the wind makes use of this runway imperative, would require closing the airport. Defendants assert that an earlier pattern of flight in use up to 1950 did not bother the Village; but plaintiffs say that modification was necessary in the interest of safety and efficiency. Be that as it may, it is quite clear that federal regulatory power as plaintiffs now interpret its exercise cannot continue to be so employed if the ordinance is valid and that the expected loss under the scale of operations of this airport is obviously irreparable in the usual equity sense.

Defendants do not seriously dispute the disruptive effect of their ordinance upon the plaintiffs' business, but assert a higher law, namely, that of the property rights of the home and land owners affected by this modern system of commerce. The dispute is clearly a very real one and not easily to be settled. In United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206, the Supreme Court, in line with other authorities, found a right of air travel over private property at a height above the minimum safe altitudes of flight prescribed by the Civil Aeronautics Authority, but held the property owners to have a right to be free of the menace of air travel at levels near the ground. Although there the Court

had to deal with much lower altitudes of flight than anything indicated by the plaintiffs' case here—of course we have not yet heard the defendants' case on the facts—the decision does show that repeated trespasses by flying at low levels will constitute a taking of an owner's property for an easement of travel, for which the owner must be compensated. So in that case the United States, the operator of the military aircraft in question, was held liable in the Court of Claims. This precedent and others of like nature are obviously the defendants' chief resort. They maintain that the regulations here, concerning low flights, either are invalid or, like the low-flying regulations before the Supreme Court in the Causby case, did not and were not intended to prescribe "minimum safe altitudes of flight" (above which the air is in the public domain), but merely prescribe how taking-off and landing operations must be conducted; that those regulations therefore confer no right or privilege to fly, at the low altitudes specified therein, over the lands of others; that flights at such altitudes accordingly constitute trespasses, absent the consent of the affected land owners; that here such consent has not been given; and that consequently the ordinance, which renders such trespasses punishable, does not conflict with those regulations if they are valid. Plaintiffs rely not merely on some factual differences between this case and Causby, but also on the contention that claims of property owners must be otherwise vindicated and do not justify the Village in interfering with federal control and regulation of air commerce.

Since the grant of the injunction below, the defendants have filed their answers. In the answer filed by certain of the individuals they claim ownership of property in the Village and, both for themselves and other land owners, that these flights create trespasses and nuisances, and by counterclaim ask for an injunction upon what in essence is the Causby principle. So the issue excluded in the plaintiffs' argument is thus definitely raised by the counterclaim, and is not to be avoided eventually, whatever the disposition of the original claim.

■■ We think it clear that there is sufficient question of the validity of the Cedarhurst ordinance as against the supremacy of national power so that we are in no way justified in now declaring it valid and overturning the injunction on this score. Among others, such cases as Bethlehem Steel Co. v. New York State Labor Relations Board, 330 U.S. 767, 773–774, 67 S.Ct. 1026, 91 L.Ed. 1234, and Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447, are to be cited in support of the national supremacy. The grant of an injunction to avoid irreparable injury under the circumstances is supported by such cases as Ohio Oil Co. v. Conway, 279 U.S. 813, 815, 49 S.Ct. 256, 73 L.Ed. 972, Terrace v. Thompson, 263 U.S. 197, 214, 44 S.Ct. 15, 68 L.Ed. 255, and Youngstown Sheet & Tube Co. v. Sawyer, D.C.D.C., 103 F.Supp. 569, 576–577, affirmed 343 U.S. 579, 585, 72 S.Ct. 863. On the other hand, we do not think we should take the position urged by the plaintiffs, and substantially followed by the district court, of declaring the ordinance clearly invalid at this preliminary stage of the proceedings. Before a trial we are not in a position to find that those defendants who are land owners cannot establish their claims of trespass and nuisance. Nor do we feel that at this stage we should say that the Village does not possess authority under its police power, N.Y.Village Law, McKinney's Consol.Laws, c. 64, §§ 90, 93, to prohibit repeated trespasses or nuisances over the land of its inhabitants, if, in fact, they exist.

■■ But one further matter requires notice at this stage, namely, the claim of the defendants that federal action should be postponed until plaintiffs exhaust their state remedies. This is somewhat of a misnomer for that recently developed federal principle whereby the federal courts avoid a decision of unconstitutionality by allowing the state tribunals a prior determination as to the meaning and validity under state law of the state or local enactment or otherwise avoid decision of an essentially state issue having a nominal basis in federal jurisdiction. But this is not a device for avoiding ultimate judgment or throwing it into other tri-

bunals. It is merely part of an attempt to work out adjustments between national and state sovereignties in the federal system and to avoid unnecessary clashes where the state enactment does not require or force such a clash. This is shown by such a case as Spector Motor Service v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101, where the final federal decision—made in Spector Motor Service v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573—was postponed until the taxing statute, ultimately held invalid as conflicting with interstate commerce, was definitively construed by the state court. On the other hand, where no such course of interpretation is necessary or helpful, where the issue is essentially federal, the federal court proceeds at once, as in Propper v. Clark, 337 U.S. 472, 489–491, 69 S.Ct. 1333, 93 L.Ed. 1480, affirming this court in Clark v. Propper, 2 Cir., 169 F.2d 324. Here there is no question of the power of the Village to adopt ordinances for the public health and safety of its inhabitants and the protection and security of their property, N.Y.Village Law, §§ 90, 93, supra; and there can be no doubt, as none is suggested, of the meaning of the ordinance and its direct clash with the federal regulations as interpreted by plaintiffs. There is therefore no occasion for postponement here for possible state action. The general authority of the court below is clear under 28 U.S.C. §§ 1331 and 1337.

It follows, therefore, that the injunction should be continued *pendente lite* and that no final decision should be made at this time, as to either the validity of the claims set forth in the defendants' counterclaims or their eventual impact upon the validity of the ordinance itself. In view of the importance of the interests involved and the potentially far-reaching effects of a decision, the case—including the counterclaim—should proceed to trial as rapidly as possible and decision should rest upon a complete record. If, then, appeal becomes necessary the reviewing courts will be able to act upon a basis of knowledge they do not now possess.

Order affirmed.