**ALL AMERICAN AIRWAYS,**
Inc., et al.
v.
**ELDERD, Mayor, et al.**
No. 124, Docket 22889.

United States Court of Appeals
Second Circuit.

Argued Dec. 17, 1953.

Decided Jan. 4, 1954.

Emerson A. Swartz, Garden City, N. Y. (James G. Moore, Garden City, N. Y., on the brief), for defendants-appellants.

Fowler Hamilton, New York City (Lyman M. Tondel, Jr., and Watt H. Denison, Jr., New York City, on the brief), for plaintiffs-appellees All American Airways, Inc., and others.

Daniel B. Goldberg, New York City (Sidney Goldstein, Nathaniel Fensterstock, Joseph Lesser, and Ralph W. Felsten, New York City, on the brief), for plaintiff-appellee The Port of New York Authority.

Before CLARK, FRANK, and HINCKS, Circuit Judges.

CLARK, Circuit Judge.

This is another round in the controversy between ten major commercial lines, the Port of New York Authority and others, and the Village and officials of Cedarhurst as to the legality of low flying from the near-by New York International Airport at Idlewild Field. In the original action the plaintiffs sought to have declared illegal and enjoined a village ordinance prohibiting low flying over the village, naming the village itself and its mayor and certain other officials as defendants. In their answer the individual defendants, in addition to defenses asserting the validity of the ordinance and the illegality of the plaintiffs' acts, set forth two counterclaims, one against the Port of New York Authority for declaratory relief and one against the plaintiff air lines for an injunction against the low flying as trespasses, and the operation of a particular offending runway at the field as a nuisance. The counterclaims were asserted on behalf of these defendants individual-

ly as property owners in the village and on behalf of all other property owners and citizens of the village similarly situated. A year ago in sustaining the grant, D.C.E.D.N.Y., 106 F.Supp. 521, of an injunction *pendente lite* against enforcement of the ordinance, we took note of this counterdemand on behalf of property owners and its bearing as raising important questions under the doctrine of United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206, affording private property owners relief against the menace of continuously low-flying aircraft. We stated therefore that we should not then take the position taken below "of declaring the ordinance clearly invalid at this preliminary stage of the proceedings," but "In view of the importance of the interests involved and the potentially far-reaching effects of a decision, the case—including the counterclaim—should proceed to trial as rapidly as possible and decision should rest upon a complete record." All American Airways v. Village of Cedarhurst, 2 Cir., 201 F.2d 273, 276, 277.

Our attempt to spur the parties into prompt and definitive action has not proven to be a complete success. An initial move by intervening plaintiffs— the Civil Aeronautics Board and the Administrator of Civil Aeronautics—for dismissal of a like counterclaim was denied by District Judge Byers particularly in the light of our suggestion quoted above. All American Airways v. Village of Cedarhurst, D.C.E.D.N.Y., 111 F. Supp. 677. The plaintiffs, however, have here persuaded another district judge to enter an order granting their motions to dismiss the counterclaims as to the so-called "related defendants" and ordering the answer amended accordingly, i. e., by the elimination of all allegations of a class suit. The defendants have appealed and the plaintiffs first attack and deny the appealability of the order. We agree with the plaintiffs' objection; although the plaintiffs actually win little, if anything, by the highly refined procedural shadow-boxing here indulged in, certainly nothing of the dignity of an appealable order, the defendants will win nothing by this purely interlocutory appeal. To paraphrase a famous saying, never have so many achieved so little in so much time.

■ In justice to the litigants it must be admitted that there still seems considerable confusion as to the meaning and effect of the third group of class actions authorized by F.R. 23(a), 28 U.S.C.A., a confusion not lessened by the load it bears in its popular legal cognomen of "spurious class action." There is perhaps something anomalous in apparent legal participation in a lawsuit by persons unnamed and unidentified as individuals who, unless they show themselves by intervening, remain legally unaffected by any action taken in the case. The legal rationale lags behind the practical utilities found in the device and its "psychological value" (3 Moore's Federal Practice 3445, 2d Ed.1948) on courts and potential litigants. It stands as an invitation to others affected to join in the battle and an admonition to the court to proceed with proper circumspection in creating a precedent which may actually affect non-parties, even if not legally *res judicata* as to them.[1] Beyond this, as we in common with other courts have pointed out, it cannot make the case of the claimed representatives stronger, or give them rights they would not have of their own strength, or affect legally the rights or obligations of those who do not intervene. Oppenheimer v. F. J. Young & Co., 2 Cir., 144 F.2d 387; California Apparel Creators v. Wieder

---

1. As the authorities cited below in the text suggest, it may be found to have certain other advantages, such as justifying federal jurisdiction otherwise endangered by a wide-party joinder, or restricting dismissal or compromise of the action without court approval under F.R. 23(c). Further, it may perhaps prevent the running of the statute of limitations, or a claim of laches, against the represented persons; see York v. Guaranty Trust Co., 2 Cir., 143 F.2d 503, 529, reversed on other grounds Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L. Ed. 2079, and 3 Moore's Federal Practice 3476 and note 23 (2d Ed.1948).

of California, 2 Cir., 162 F.2d 893, 174 A.L.R. 481, certiorari denied 332 U.S. 816, 68 S.Ct. 156, 92 L.Ed. 393; 3 Moore's Federal Practice 3447–3456 (2d Ed.1948). True, in Dickinson v. Burnham, 2 Cir., 197 F.2d 973, 979, certiorari denied 344 U.S. 875, 73 S.Ct. 169, we noted a query advanced by text writers to the possibilities of extending the scope of *res judicata*, where adequate notice and specific opportunity to come in have been accorded the persons represented; but it is obvious that here in any event no such compulsive notice as the writers visualize is possible as to the unascertained property owners.

The defendants quite certainly aided the process of hypostasis of these nameless and as yet disembodied spirits by christening them "related defendants" in the counterclaims and treating them thereafter as persons who, as urged on this appeal, may forever forfeit their right to review unless now claimed. And the plaintiffs and the trial court have completed the process so much so that they now urge the counterclaims cannot be allowed in this aspect because here the defendants and plaintiffs are not "opposing" parties within the meaning of the counterclaim rule, F.R. 13(a, b), indeed, that the defendants are not even parties in a representative capacity. This contention, which might have some bearing in at least the case of the true class suit, cf. Higgins v. Shenango Pottery Co., D.C.W.D.Pa., 99 F.Supp. 522, seems odd here. For, if sound, the conclusion should lead to the bringing in of the parties thus obviously necessary for the granting of complete relief under F.R. 13(h). So defendants should then proceed to cite in themselves with nothing beyond their present status except a possible slight additional coloration of appearing to speak for massed forces, contrary to the teaching of the cases cited above, e. g., California Apparel Creators v. Wieder of California, supra, 2 Cir., 162 F.2d 893, at page 897. On the other hand, we do not see justification for the plaintiffs' hope or prophecy (asserted in their briefs) that the dismissal order will enable them to limit their proof at trial. Certainly at least as to the issue we noted before, 201 F.2d at page 276, involving the police power of the village, "to prohibit repeated trespasses or nuisances over the land of its inhabitants, if, in fact, they exist," the court must consider evidence, if proffered, of plane flights at low altitudes over all parts of the village.

The net result is that here there is no denial of an injunction so far as actual persons are concerned, only an order for prettifying the pleadings in the eyes of the trial judge. That is a matter for his discretion if the process does not overlong delay the actual trial. Thus the order can have no possible effect as withdrawing an invitation to other property owners to come in, since each will make his plea to intervene under F.R. 24(b) and, in view of the substantial desirability of a full settlement of the important general legal principles involved, cannot be denied careful consideration of his plea, whatever have been the prior moves in the case. On the other hand, if a property owner shrewdly wishes to stay on the side lines with the hope that an injunction, say, for the village will give him everything he may hope for, that surely is his untrammeled privilege. Nor, in view of the publicity undoubtedly accorded this litigation throughout the length and breadth of this village, is it likely that the order will have any appreciable effect in seeming to narrow the invitation to other local property owners. In any event the non-appealability of the order in this type of class action is apparent. Oppenheimer v. F. J. Young & Co., supra, 2 Cir., 144 F.2d 387; Jumps v. Leverone, 7 Cir., 150 F.2d 876. It may be noted that the separately pleaded counterclaim against the Port of New York Authority asks only for declaratory relief, not even an injunction.

Appeals dismissed.