ALLEGHENY AIRLINES, Inc., et al., Plaintiffs-Appellees,

Civil Aeronautics Board and Administrator of Civil Aeronautics, Intervenors-Appellees,

v.

VILLAGE OF CEDARHURST et al., Defendants-Appellants.

No. 14, Docket 23934.

United States Court of Appeals Second Circuit.

Argued Oct. 9, 1956.

Decided Dec. 13, 1956.

James G. Moore, Garden City, and Maurice Brandt, Cedarhurst, N. Y., for defendant Village and its officials.

Emerson A. Swartz, Garden City, N. Y., for individual defendants, for appellants.

Fowler Hamilton, New York City, Watt H. Denison, Jr., and Andre W. G. Newburg, New York City, on the brief, for plaintiff Airlines, appellees.

Franklin M. Stone, Gen. Counsel, John H. Wanner, Associate Gen. Counsel, O. D. Ozment, Chief, Litigation and Research Division, Robert L. Park and Gerald F. Krassa, Attorneys, Civil Aeronautics Board, Washington, D. C., Victor R. Hansen, Asst. Atty. Gen., Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., Daniel M. Friedman, Atty., Department of Justice, Washington, D. C., and Gerald F. White, Chief, Enforcement and Litigation Division, Elizabeth City, N. C., and Robert P. Boyle, Gen. Counsel, Civil Aeronautics Administration, Washington, D. C., for Civil Aeronautics Board and Administrator of Civil Aeronautics, intervenors-appellees.

Sidney Goldstein, New York City, Daniel B. Goldberg, Nathaniel Fensterstock and Joseph Lesser, New York City, on the brief, for The Port of New York Authority, plaintiff-appellee.

Samuel J. Cohen, New York City, Samuel J. Cohen and Henry Weiss, New York City, of counsel, for Air Line Pilots Ass'n International et al., plaintiffs-appellees.

Before CLARK, Chief Judge, and HAND and SWAN, Circuit Judges.

SWAN, Circuit Judge.

This appeal involves the constitutionality of an ordinance of the Village of Cedarhurst prohibiting air flights over the village at less than 1,000 feet above the ground. The plaintiffs are airline companies which use the New York International Airport, known also as "Idlewild," the Port of New York Authority, which operates the airport under a long term lease from the City of New York, the Air Line Pilots Association International, and individual air pilots whose employment requires them to pilot aircraft to and from the airport. Civil Aeronautics Board and the Administrator of Civil Aeronautics, which are the agencies authorized by statute to administer the federal regulatory system of interstate and foreign air transportation, were permitted to intervene as parties-plaintiff.[1] The defendants are the Village of Cedarhurst and its Trustees and Counsel, sued both in their official and individual capacities. The Village is situated at its nearest point about 4,000 feet from the eastern end of the Airport.

The case was tried to the court without a jury, and Judge Bruchhausen permanently enjoined enforcement of the ordinance. His lengthy and thorough opinion is reported in 132 F.Supp. 871. Reference to it will avoid the necessity of recounting here the earlier stages of the litigation or the findings of fact stated in his opinion.[2] It will suffice to say, in brief, that the trial court held that under the Commerce Clause, Article 1, section 8, Clause 3 of the Constitution, Congress had power to regulate the flight of aircraft in interstate and foreign commerce, that this power was exercised by the Air Commerce Act of 1926, 49 U.S.C.A. § 171 et seq., the Civil Aeronautics Act of 1938, 49 U.S.C.A. § 401 et seq., and the Regulations of the Civil Aeronautics Board and the Administrator of Civil Aeronautics, that thereby the federal government preempted the field of air traffic regulation, and that the ordinance, which plainly conflicts with the federal statutes and regulations, was invalid.

The appellants do not dispute that the federal government has preempted the field of regulation and control of the flight of aircraft in the air space 1,000 feet or more above the ground. The dispute relates to lower reaches of air space which are necessary for take-offs from and landings at airports. As to this the appellants contend, in substance, (1) that Congress has not purported to preempt the air space under 1,000 feet; and (2) that the Regulations of the Civil

1. Under the Civil Aeronautics Act of 1938, as originally passed, the Board was called "Civil Aeronautics Authority."

2. Prior proceedings have been before this court in All American Airways v. Village of Cedarhurst, 201 F.2d 273 and All American Airways v. Elderd, 209 F.2d 247.

Aeronautics Board and the Administrator, which in some circumstances require planes leaving or landing at Idlewild to pass over Cedarhurst at an elevation as low as 450 feet, are invalid.

The first contention is refuted by the terms of the Civil Aeronautics Act of 1938. Section 3, 49 U.S.C.A. § 403, declares

"There is recognized and declared to exist in behalf of any citizen of the United States a public right of freedom of transit in air commerce through the navigable air space of the United States."[3]

Section 2, 49 U.S.C.A. § 402, directs that in exercising its powers and performing its duties under the Act, the Board shall consider as being in the public interest and in accordance with the public convenience and necessity "(e) The regulation of air commerce in such manner as to best promote its development and safety." Section 601, 49 U.S.C.A. § 551(a) empowers and directs the Board

" * * * to promote safety of flight in air commerce by prescribing and revising from time to time—

 *   *   *   *   *   *

"(7) Air traffic rules governing the flight of * * * aircraft, including rules as to safe altitudes of flight and rules for the prevention of collisions between aircraft, and between aircraft and land or water vehicles."

The foregoing provisions contain no suggestion that "navigable air space" is restricted to air space not less than 1,000 feet above the ground. On the contrary the Congressional purpose is clear to empower the Board to make rules as to safe altitudes of flight at any elevation, since its rules were to have, among other objects, prevention of collisions between aircraft, and between aircraft and land or water vehicles. Obviously the greatest danger of such collisions is when an aircraft takes off or lands. Appellants' argument that the Board has itself established the minimum safe altitude of flight over a congested area, such as Cedarhurst, at 1,000 feet, completely disregards the express exception of take-off and landing stated in the regulation.[4] The federal regulatory system, if valid, has preempted the field below as well as above 1,000 feet from the ground.[5]

The appellants attack the validity of the federal regulations on two main grounds: (a) that they are the product of an invalid delegation of legislative power, and (b) that they constitute a taking of private property without compensation in violation of the Fifth Amendment. With respect to the latter ground little need be said. In United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206, it was held that flights of military aircraft over private land which were so low and so frequent as to result in the destruction of the property as a commercial chicken

3. "Air commerce" is defined in section 1(3) as including "any operation or navigation of aircraft which directly affects, or which may endanger safety in, interstate, overseas, or foreign air commerce"; and "navigable air space" is defined in section 1(24) as "air space above the minimum altitudes of flight prescribed by regulations issued under this chapter." 49 U.S. C.A. § 401.

4. 14 C.F.R. "§ 60.17 Minimum Safe Altitudes. Except when necessary for take-off or landing, no person shall operate an aircraft below the following altitudes:
 "(a) Anywhere. An altitude which will permit, in the event of the failure of a power unit, an emergency landing without undue hazard to persons or property on the surface;
 "(b) Over congested areas. Over the congested areas of cities, towns or settlements, or over an open air assembly of persons, an altitude of 1000 feet above the highest obstacle within a horizontal radius of 2000 feet from the aircraft. * *
 "(c) Over other than congested areas. An altitude of 500 feet above the surface * * *." See also 19 F.R. 4602.

5. See Chicago & Southern Air Lines v. Waterman S. S. Corp., 333 U.S. 103, 107, 68 S.Ct. 431, 92 L.Ed. 568; Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447.

farm constituted the taking of an easement of flight compensable under the Fifth Amendment. But the opinion recognizes that the ancient common law doctrine that ownership of the land extends to the zenith "has no place in the modern world," 328 U.S. at page 261, 66 S.Ct. at page 1065, and that "Flights over private land are not a taking, unless they are so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land," 328 U.S. at page 266, 66 S.Ct. at page 1068. In the case at bar the court found that the operation of aircraft over the Village of Cedarhurst, in landing at and taking off from Idlewild, occurs at altitudes of from 450 feet upward to 1,-500 feet; that a great majority of flights would be at altitudes of 1,000 feet or above; that aircraft do not operate continually over the Village at even these altitudes but only under particular weather conditions and in the use of particular runways under various sets of circumstances which make it impossible to be precise as to the number of flights over the Village at any specific altitude; and that there is no evidence that the operations constitute a trespass or nuisance to the people of the Village.[6] Such findings preclude the possibility of finding a "taking" within the doctrine of the Causby case. See also Hinman v. Pacific Air Transport, 9 Cir., 84 F.2d 755, certiorari denied 300 U.S. 654, 57 S.Ct. 431, 81 L.Ed. 865, which held that flights under 100 feet above the surface do not constitute a trespass in the absence of allegations of actual and substantial damage.

■■ The other main ground of attack upon the regulations of the Board which require a plane on landing or taking off under certain conditions to invade the air space above the land of the Village at less than 1,000 feet is that it represents an unconstitutional delegation of legislative power. By section 601(a) (7), 49 U.S.C.A. § 551(a) (7), previously quoted, Congress delegated to the Board the power and the duty to prescribe "rules as to safe altitudes of flight." By section 2(b), 49 U.S.C.A. § 402(b), it was directed to consider as being in the public interest the regulation of air transportation in such manner as to "assure the highest degree of safety." The substance of the appellants' argument is that the word "safe" is not a sufficiently definitive standard to permit valid administrative action under the delegation. They assert that Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 and Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, are determinative of the case at bar. Those cases, however, involved delegations without any guiding standard at all. It is not necessary that Congress prescribe a standard that can be applied with mathematic certainty. As the court said in Lichter v. United States, 334 U.S. 742, 785, 68 S.Ct. 1294, 1316, 92 L.Ed. 1694:

"It is not necessary that Congress supply administrative officials with a specific formula for their guidance in a field where flexibility and the adaptation of the congressional policy to infinitely variable conditions constitute the essence of the program. 'If Congress shall lay down by legislative act an intelligible principle * * * such legislative action is not a forbidden delegation of legislative power.' J. W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624. Standards prescribed by Congress are to be read in the light of the conditions to which they are to be applied."

It would be utterly impracticable to attempt to specify by statute the precise height at which a plane could safely take off from or land at an airport, since in each instance decision must depend on many variants, such as weather conditions, character of the terrain, locations of cities and of airports, size and weight

---

6. These findings appear at pp. 600a–601a, Appellants' Appendix.

of the plane and its cargo, and other relevant factors. Such decisions can only be made by some specially equipped administrative agency which can act *ad hoc* to carry out the congressional policy declared by statute. Again and again delegations to such agencies have been sustained where the standards for administrative action were less precise than in the case at bar.[7]

Additional contentions made by the appellants have not been overlooked but they do not in our opinion merit discussion.

Judgment affirmed.

---

**7.** For example, see Avent v. United States, 266 U.S. 127, 45 S.Ct. 34, 69 L.Ed. 202; Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524; New York Central Securities Corp. v. United States, 287 U.S. 12, 53 S.Ct. 45, 77 L.Ed. 138; Federal Radio Commission v. Nelson Bros. Co., 289 U.S. 266, 53 S.Ct. 627, 77 L.Ed. 1166; American Power & Light Co. v. S. E. C., 329 U.S. 90, 105, 67 S.Ct. 133, 91 L.Ed. 103.