**NEW YORK CITY TRANSIT AUTHOR-ITY, a public benefit corporation of the State of New York, on behalf of itself and all others similarly situated, Plaintiff,**

v.

**UNITED STATES STEEL CORPORA-TION, Bethlehem Steel Company, Armco Steel Corporation, Edgewater Steel Company and Baldwin-Lima-Hamilton Corporation, Defendants.**

No. 66 Civ. 61.

United States District Court
S. D. New York.

May 11, 1966.

Sidney Brandes, Brooklyn, N. Y., for New York City Transit Authority.

Stone, Malone, Driver & McNeill, New York City, for Intervenor, Hudson Rapid Tubes Corp.

Cravath, Swaine & Moore, New York City, for Bethlehem Steel Co.

White & Case, New York City, for U. S. Steel Corp.

Breed, Abbott & Morgan, New York City, for Armco Steel Corp.

Cleary, Gottlieb, Steen & Hamilton, New York City, for Edgewater Steel Co.

Sullivan & Cromwell, New York City, for Baldwin-Lima-Hamilton Corp.

## MEMORANDUM

FRANKEL, District Judge.

On January 10, 1966, the New York City Transit Authority brought this treble-damage action under Section 4 of the Clayton Act, 15 U.S.C. § 15. The complaint is stated to be filed "on behalf of the New York City Transit Authority, and all other public bodies and agencies, municipalities, governmental subdivisions, private persons, firms and corporations similarly situated * * *" (par. 1.). Similarly, after stating that plaintiff is a public benefit corporation "engaged in the operation of a rapid transit railroad within the City of New York" (par. 2), the complaint asserts (par. 3) that:

> "The plaintiff is representative of a class consisting of all public bodies and agencies, municipalities, governmental subdivisions, private persons, firms and corporations purchasing wrought steel wheels, sometimes referred to as rolled steel wheels, for

use on passenger and freight cars, subways and elevated rapid transit lines and electric railways, and brings this action as a class suit pursuant to Rule 23(a) (3) of the Federal Rules of Civil Procedure. The members of the class are so numerous as to make it impracticable to bring them all before the Court, and the plaintiff herein will fairly insure the adequate representation of the entire class. The rights of all members of the class to recover against the defendants for violations of the Sherman Act, as hereinafter alleged, are affected by common questions of law and fact and are sought to be vindicated by common relief."

Briefly summarized, the complaint's substantive charges are that defendants have been engaged in manufacturing and selling wrought steel wheels for rapid transit and other railroad cars; that such wheels are sold and shipped in interstate commerce to public and private railroad operators as well as manufacturers of passenger and freight cars; that from "at least as early as 1948 and continuing to at least 1962," the defendants combined and conspired, contrary to Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1, by agreeing to fix prices through a variety of specified devices and arrangements; that the conspirators made identical bids on wrought steel wheel contracts of both public and private users; that the defendants were indicted for the conspiracy on April 2, 1963, and convicted on various dates in 1963 and 1965; that plaintiff bought over $10,000,000 worth of wrought steel wheels from defendants during the period of the conspiracy; and that "plaintiff and all members of the class which it represents" were damaged by the excessive prices charged pursuant to the unlawful combination.

Less than two months after the Transit Authority sued, the City of New York moved under Rule 24, Fed.R.Civ.P., for leave to intervene as a plaintiff. The proposed complaint of the City substantially duplicates the Transit Authority's in describing the alleged conspiracy, its techniques, the indictment and convictions, and the nature of the City's injury. It alleges purchases by the City from defendants of more than $8,230,000 in wrought steel wheels during the period of the claimed conspiracy.

Within a week after the City's motion, Hudson Rapid Tubes Corporation moved to intervene as a plaintiff. Alleging that it succeeded in December, 1961, after a reorganization, to the rights of Hudson & Manhattan Railroad Company in an interstate-interurban rapid transit electric railway running between New York and New Jersey, this movant's proposed complaint also duplicates in substantial measure that of the Transit Authority. It alleges (par. 20) that Hudson Rapid Tubes, its predecessors and their suppliers, during the period of the alleged conspiracy, "purchased from various of the defendants wrought steel wheels in a total amount exceeding $365,000."

The defendants have not filed an answer to the Transit Authority's complaint. Instead, they have (1) opposed the motions to intervene and (2) moved under Rule 12(f), Fed.R.Civ.P., "for an order dismissing this action as a class action under Rule 23(a) * * * on the grounds that the class as alleged is not a class within the meaning of Rule 23(a), that plaintiff is not such a person as will fairly insure adequate representation of the alleged class, and that the alleged common questions of law and fact are not sufficient to justify a class action * * *."

We were reminded the other day, just after these motions were argued, that the proper course with matters of this kind is to rule first on the motions for intervention, then on the essentially "esthetic" motion to strike the class suit allegations. Lipsett v. United States, 359 F.2d 956 (2d Cir. 1966). Those instructions remain controlling until or unless the radically altered new Rule 23 becomes

effective on July 1, 1966. Following them, we conclude that defendants' contentions must be rejected.

■ 1. The motions to intervene seem overwhelmingly right under Rule 24(b) (2). The proposed complaints are to a large extent copies of the unanswered original filed by the Transit Authority. The gist of all three is a detailed and enduring conspiracy concerned with a single type of product. The claims will have far more than one "question of law or fact in common." It is highly probable that joinder will effect important economies in pretrial as well as trial proceedings.

Against the obvious points favoring joinder, defendants say three things: (1) that the movants for intervention have claims based upon entire cars bought from manufacturers who bought the wheels from defendants while the Transit Authority sues for wheels alone bought directly from defendants; (2) that the Transit Authority purchased on sealed bids whereas the proposed intervenors did not; and (3) that "there is a substantial question as to whether Hudson, its predecessor or its successor is the proper party to allege any claim against defendants." Memorandum opposing intervention, p. 2.

■ As to the first point, both movants allege that they bought wheels alone as well as wheels on cars. To this extent at least, their claims are exactly like the Transit Authority's. If this were not so, however, it would make no difference for present purposes. Defendants do not claim on the motions before us that purchasers of cars may not sue, cf. State of Missouri v. Stupp Bros. Bridge & Iron Co., 248 F.Supp. 169, 172–175 (W.D.Mo.1965); they say only that the "differences between the claims of purchasers of wheels from defendants and the claims of purchasers of cars from car manufacturers who were supplied with wheels by defendants are so great that, if purchasers of cars are permitted to intervene, the litigation would become broader and far more complex than it already is." Memorandum opposing intervention, p. 3. To some extent defendants are undoubtedly correct. How much broader the litigation will become, and whether it will really be "far more complex" are matters on which we are entitled to be uncertain, perhaps even skeptical, at this early stage. What remains decisive now, at any rate, is that the central feature—the "integral core" —of the intervenors' claims is the same single conspiracy. Weeks v. Bareco Oil Co., 125 F.2d 84, 88 (7th Cir. 1941); and see Nagler v. Admiral Corporation, 248 F.2d 319, 327 (2d Cir. 1957). This broad area of identity far outweighs the subjects on which the claims may be several, whether in the manner of injury or in the measure of damages. Such potential divergencies are insufficient either to bar the suit as a class action or to warrant denial of the motions to intervene. Cf. Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 914–915 (9th Cir. 1964); Kainz v. Anheuser-Busch, Inc., 194 F.2d 737, 743 (7th Cir.), cert. denied, 344 U.S. 820, 73 S.Ct. 17, 97 L.Ed. 638 (1952); City of Chicago v. Allen Bradley Company, 32 F.R.D. 448, 451–452 (N.D.Ill.1963); P. W. Husserl, Inc. v. Newman, 25 F.R.D. 264, 266 (S.D.N.Y.1960); 3 Moore, Federal Practice 3455 (2d ed. 1964).

■ The matter of sealed bids versus other forms of price quotation is not more imposing. If all the prices were conspiratorially fixed, the differences in their mode of submission do not appear, even in defendants' theorizing about the problem, to be such large variations as to make joinder unwise. If there was no conspiracy, the three plaintiffs are equally out of court. If, finally, the proof should tend to show a conspiracy affecting only sealed bids and not others, or vice versa, the potential complexities do not seem nearly so unmanageable as to outweigh the benefits of joinder as seen from our present vantage point. Should the picture change sufficiently

as the case unfolds, "there is always at hand the authority to order separate trials of particular issues." Nagler v. Admiral Corporation, 248 F.2d 319, 328 (2d Cir. 1957).

■ The "substantial question" whether Hudson, rather than its predecessor or successor, is a proper party is one the defendants must choose to press or not as they see fit. The mere announcement that it exists, or may exist, is no reason at all for denying the intervention at this time.

2. Having concluded that the only two parties who have thus far sought to intervene should be allowed to do so, we find little merit in the "esthetic" and highly abstract claim of defendants that the Transit Authority's class suit allegations should be stricken.

As the parties agree, this proceeding, which goes by the inelegant name of "spurious class action," is essentially not much more than "an invitation to others affected to join in the battle and an admonition to the court to proceed with proper circumspection in creating a precedent which may actually affect non-parties, even if not legally *res judicata* as to them." All American Airways, Inc. v. Elderd, 209 F.2d 247, 248 (2d Cir. 1954). Seen in this light, defendants' motion is at best a device "for prettifying the pleadings" (id. at 249), a kind of academic endeavor that ought not to be encouraged.

■ To defendants' claim that the Transit Authority does not adequately represent potential plaintiffs who may attempt later to intervene, the answer is that it does not have to. "There is really no question of adequacy of representation, for in fact there is no representation at all, of non-party members." Lipsett v. United States, supra, 359 F.2d at 959.

Defendants point out that the Transit Authority's complaint purports to speak

for all manner of railroads—public and private, steam, diesel, electric, freight, passenger—whereas this plaintiff runs only urban electric trains. The wheels, say defendants, are diverse, as are the buyers. And, defendants argue, these diversities "may" (a frequent word in defendants' papers) produce a broad spectrum of complexities as variant members of the alleged "class" enter the lists. Accordingly, defendants urge that if the class suit allegations are not removed altogether, the court should at least dispel the uncertainties that beset them by limiting and defining the class at this stage. We conclude that there is no compelling argument for, and substantial arguments against, this proposal.

Except for the two we are deciding now, there are no motions for intervention. There may never be any more. If and when others come, it will be time enough to focus, in the context of relatively concrete circumstances, on defendants' assertions that other kinds of railroads are too different to have their claims heard in the same action. A decision on this subject now could not, in any event, conclude future applicants for intervention under Rule 24(b). All American Airways v. Elderd, supra, 209 F.2d, at 249. Thus, without attempting to forecast what may become proper after July 1, 1966, we follow a sound tradition and the existing Rule 23 when we refrain for now from ruling on hypotheticals.

This conclusion accords, we believe, with the doctrine lately announced by our Court of Appeals. "Since the District Court must use its discretion on ruling on motions to intervene, there would be no point in deciding the matter earlier, even if it could, when the question is largely speculative." Lipsett v. United States, supra, 359 F.2d at 959.

The motions for permission to intervene (Nos. 100 and 101) are granted. Defendants' motion (No. 75) is denied.

So ordered.