**FLYNN et ux. v. UNITED STATES.**

No. 14702.

United States Court of Appeals
Eighth Circuit.

July 15, 1953.

Harry A. Frank, St. Louis, Mo. (Edward C. Schneider, St. Louis, Mo., on the brief), for appellants.

Nathan Siegel, Sol., Office of Rent Stabilization, Washington, D. C. (Ed Dupree, Gen. Counsel, A. M. Edwards, Jr., Asst. Gen. Counsel, and David M. Scheffer, Sp. Litigation Atty., Washington, D. C., on the brief), for appellee.

Before SANBORN, RIDDICK and COLLET, Circuit Judges.

RIDDICK, Circuit Judge.

This is an appeal by Robert J. Flynn and Beatrice Flynn, his wife, from a judgment against them in an action brought by the United States under the Housing and Rent Act of 1947, as amended, 50 U.S.C.A. Appendix, §§ 1881–1902, hereinafter referred to as the Act.

The appellants are the owners of an apartment building in the St. Louis Defense Rental Area containing two apartments, one on the first and one on the second floor. At all times involved in this action the maximum legal rent for each apartment unfurnished was $39 a month, the lessor furnishing running water. The apartments were never registered for rent furnished.

The complaint charged that from January 6, 1950, to September 8, 1950, Helen L. and Otto Richter, tenants of the first floor apartment, paid appellants a monthly rental of $108.33, an overcharge of $554.64; that from September 15, 1950, to March 20, 1951, Hyman Kaufman, as tenant of the first floor apartment, paid appellants $100 a month, an overcharge of $382.67; that Florence and Kenneth Bien, tenants of the second floor apartment from December 1, 1947, to May 1, 1951, paid $42.50 a month rent, were required to pay water bills of $25.27, and, in addition, a cash bonus of $200 as a condition precedent to the rental of the apartment, an overcharge of $368.77; and that the overcharges demanded and received from the above-named tenants within one year preceding the filing of this action amounted to $713.55. Judgment against appellants was asked for three times the overcharges received within the year preceding the filing of the suit; for an order directing appellants to pay to the Treasurer of the United States for and on behalf of the tenants the overcharges received from the tenants, with the provision "That in the event the Court grants restitution to the United States for and on behalf of persons entitled thereto, the claim of the United States for treble damages may be reduced by the amount of restitution granted for violations occurring within one year immediately preceding the filing of this suit"; and for an order enjoining appellants from further violations of the Act. The final prayer of the complaint is for costs of this action and such other relief as the plaintiff may be entitled to.

Admitting that the apartment building was a controlled housing accommodation, and that the parties named as tenants had occupied the accommodations for the times alleged in the complaint and during the period of their occupancies had made the payments as alleged in the complaint, the appellants denied that they were landlords or that the parties named in the complaint were tenants within the meaning of the Act. They alleged that for the periods stated in the complaint Richter occupied the first floor apartment under a lease in which one Charles T. Tierney was lessor and Helen L. Richter was lessee; that Kaufman occupied the first floor apartment as a purchaser of the apartment property and not as a lessee; that Bien occupied the second floor apartment as lessee under a lease from appellants for the lawful maximum rent of $39 a month, plus $3.50 a month for the use of a garage; that this apartment had formerly been occupied by one Peter Menser who sold his furniture to Bien; that the alleged $200 bonus was in fact a commission paid Robert J. Flynn for arranging the details of the sale of Menser's furniture to Bien.

On a trial before the court without a jury, all issues were resolved in favor of appellee. The court found that the appellants were the landlords and that Richter, Kaufman, and Bien were tenants of the housing accommodations within the meaning of the Act; that appellants demanded and received from the tenants as rent for the apartments the sums set out in the complaint resulting in the overcharges alleged; and that the appellants were guilty of willful violations of the Act. The court entered an order enjoining the appellants from further violations of the Act and directing them to pay to the Treasurer of the United States for the benefit of each tenant the overcharges demanded and received from him, and a judgment in favor of the United States for treble the amount of overcharges occurring within one year immediately preceding the trial.

For reversal the appellants contend that the court's findings that appellants were landlords within the meaning of the Act in relation to the occupants of the apartments, and that appellants received from the tenant Bien a bonus of $200 as a condition precedent to the rental of the second floor apartment, are contrary to the evidence; and that the court's action in entering a judgment for the United States for treble damages, together with an order of restitution to the tenants, was an abuse of discretion by the trial court. These assignments make necessary a statement of the evidence.

Beatrice Flynn purchased the apartment property here involved from Peter Menser and Nathella Menser in November 1946. As a part of the consideration for this transaction the Mensers received a lease on the second floor apartment expiring November 1, 1948, at a rental of $38 a month. In July 1948 Beatrice Flynn conveyed an undivided one-half interest in the property to Charles T. and Ruth S. Tierney who occupied the first floor apartment from November 1947 until August 1949 when they moved to California. By a deed placed of record in March 1950 the Tierneys conveyed their one-half interest in the property to James J. and Rosemary Flynn.

Robert J. Flynn testified that he was the real purchaser in this transaction.

Robert J. and Beatrice Flynn operated the Southwest Realty Investment Company, engaged as agent in the purchase and sale of real property. The appellants admit that the Southwest Realty Investment Company through Robert J. Flynn acted as agent in all transactions questioned in this proceeding, and that this company through Robert J. Flynn received all payments made by Richter, Kaufman, and Bien.

Richter took possession of the first floor apartment under a lease in which Charles T. Tierney appears as lessor and Helen Richter as lessee. At the time of this transaction the record title to the apartment property was held by Beatrice Flynn and Charles Tierney as tenants in common. Robert J. Flynn testified that Tierney, during his ownership of an undivided one-half interest in the apartment property, occupied the first floor apartment and "claimed" this apartment as his share in the common property; that in negotiating the lease with Richter he acted as agent for Tierney. He admitted, however, that he fixed the rent payable by Richter without consulting Tierney. The lease is signed "Charles T. Tierney, by Robert J. Flynn, Southwest Realty Investment Company, Agent."

At the time of the Kaufman transaction, the real owners of the apartment property were Beatrice and Robert J. Flynn, each owning an undivided one-half interest. Kaufman took possession of the first floor apartment on September 13, 1950, under a written agreement in form a contract for the sale of the apartment property for the consideration of $17,500. Under the contract Kaufman paid the Southwest Realty Investment Company $300 as "earnest money," for which he was permitted to occupy the first floor apartment for a period of three months, receiving at the same time the right to remain in the apartment for a second three months upon the payment of another installment of "earnest money" of $300. At the end of the six months he was required by the contract to pay in cash the balance of the purchase price less $600, or to vacate the apartment and forfeit the pay-

ments of "earnest money." During his occupancy under this contract Kaufman was not permitted to collect the rent on the second floor apartment. He remained in the first floor apartment for five days beyond the agreed six months, for which he paid rent at the rate of $100 a month. There was substantial evidence to show that the value of the apartment property was $12,500.

Kaufman had been evicted from an apartment occupied by him and was building a new residence. It was necessary that he acquire immediate possession of housing accommodations for his family. He testified that he never intended to purchase the apartment property and that he considered the contract a mere subterfuge to avoid the Act. The negotiations between Kaufman and Robert J. Flynn leading to the execution of the contract were completed within thirty minutes. Flynn made no inquiry concerning Kaufman's financial position and apparently Kaufman made none concerning the value of the apartment property. Flynn knew that Kaufman was building a new house, and that he needed accommodations for his family until the new house was completed. The "earnest money" paid by Kaufman on a monthly basis was approximately the same as the rent paid by Richter who had just vacated the apartment when Kaufman took possession.

At the time of the Bien transaction in November 1947 Beatrice Flynn was the sole owner of the apartment property. Peter Menser held the second floor apartment under a lease which expired in November 1948. The lease contained a provision giving Menser the privilege of termination upon thirty days' notice to Beatrice Flynn. Menser was moving to Florida. In response to a newspaper advertisement Bien approached Menser with a view to renting the second floor apartment. He was advised by Menser that the apartment building was for sale, not for rent, but that since Menser was leaving St. Louis he thought he would be able to arrange with Robert J. Flynn for Bien to rent the second floor apartment if Bien would purchase Menser's furniture. Menser told

Bien that he would take the matter up with Robert J. Flynn and asked Bien to return to the apartment later in the evening. When Bien returned, Robert J. Flynn was present. Flynn told Bien that the apartment could not be rented without the purchase of the furniture. Bien agreed to the purchase, and at the direction of Flynn drew a check for $200 payable to Flynn as earnest money on the agreement to purchase Menser's furniture. This check when introduced in evidence bore the endorsements of both Robert J. and Beatrice Flynn.

On this evidence the court was right in finding that the appellants were landlords within the meaning of the Act in relation to all the occupants of the apartment building. To sustain this finding it is not necessary, as appellants seem to think, that the evidence establish the formal relation of landlord and tenant under State law between appellants and the occupants of the apartment building. Aarons v. United States, 8 Cir., 200 F.2d 828, 830; Woods v. Petchell, 8 Cir., 175 F.2d 202, 206; Mahanor v. United States, 1 Cir., 192 F.2d 873, 876. Nor is it necessary that the person demanding or receiving rent hold title to the property rented. Section 206(a) of the Act, as amended, provides:

"It shall be unlawful for any person to demand, accept, receive, or retain any rent for the use or occupancy of any controlled housing accommodations in excess of the maximum rent prescribed under this Act * * *."

The term "person" is defined in section 202(a) of the Act as including "an individual, corporation, partnership, association, or any other organized group of persons"; and section 205 of the Act makes "any person who demands, accepts, receives, or retains any payment of rent in excess of the maximum rent prescribed * * * liable to the person from whom such payment is demanded, accepted, received, or retained * * *." By section 10 of the Housing Rent Regulations, the term " 'Landlord' includes an owner, lessor, sublessor, assignee, or other person receiving or entitled to receive rent for the use or occupancy of any housing accommodations, or an agent of any of the foregoing."

By section 11 of the regulations the term "tenant" is defined as a "subtenant, lessee, sublessee, or other person entitled to the possession or to the use or occupancy of any housing accommodations." And by section 12 " 'Rent' means the consideration, including any bonus, benefit, or gratuity demanded or received for or in connection with the use or occupancy of any housing accommodations or the transfer of a lease of such accommodations." Title 32A, CFR, 5278, 5279.

■■ At the time of the Richter transaction, the record title to the apartment property was held by Beatrice Flynn and Charles Tirney as tenants in common. As such they were equally entitled to the use, benefit, and possession of the common property and to participate in its rents and profits. Neither was entitled to exclude the other. That Tierney occupied the first floor apartment and "claimed" it as his share of the common property, while Beatrice Flynn received the rent from the second floor apartment when the maximum lawful rents for the apartments were the same does not, if true, establish a severance of interests of the tenants in common. In this connection it is significant that Beatrice Flynn, although a defendant in the action, never appeared as a witness. Moreover, Beatrice Flynn and Robert J. Flynn were engaged in the operation of the Southwest Realty Investment Company. This company received the rents paid by Richter for the first floor apartment, and Robert J. Flynn fixed the rent charged Richter in excess of the legal maximum without directions from Tierney and, so far as the record goes, without his knowledge. On this evidence both Beatrice Flynn and Robert J. Flynn were, within the plain meaning of the Act and the regulations, "persons" who were not only entitled to receive but did receive the rent paid for the housing accommodations. They were "landlords" within the meaning of the Act and the rent regulations. That Beatrice Flynn did not appear as a party lessor in the Richter lease is unimportant. The evidence supports the inference that Robert J. Flynn, who arranged every transaction with the occupants of the apartment building and who fixed and collected the amount of the rent payable in each case, acted as agent for the persons entitled to receive the rent. Beatrice Flynn is liable for the overcharges demanded and received by her agent regardless of whether she received any part of the proceeds. United States v. Waters, 7 Cir., 194 F.2d 866, 868; Burton v. Katzman, 7 Cir., 187 F.2d 703, 705; Mahanor v. United States, supra.

■■ The court's findings that the purported contract of sale of the apartment property to Kaufman was in fact a mere subterfuge to avoid the provisions of the Act, and that the $200 paid to Robert J. Flynn in connection with the sale of Menser's furniture was required as a condition precedent to the renting of the apartment, are amply supported by the evidence. That the purported sales contract may have been valid and enforceable as such under Missouri law is irrelevant. The question is rather whether the parties intended the sale of the apartment property or whether the contract was used as a mere cloak to conceal a violation of the maximum rent provisions of the Act. The question before the court was one of fact. So also was the question of whether the payment of $200 by Bien in the Menser transaction was required as a condition precedent to the renting of the apartment. The most that can be said for appellants on either question is that the evidence was in conflict. The credibility of the witnesses, the weight of the evidence, and the inferences reasonably to be drawn from the evidence were for the trial judge. Sherman Inv. Co. v. United States, 8 Cir., 199 F.2d 504, 506.

There remains for consideration appellants' charge that on the facts of this case the District Court abused its discretion in awarding the United States a judgment for treble damages and at the same time ordering restitution to the tenants. In United States v. Ziomek, 8 Cir., 191 F.2d 818, 821, we held in an action by the United States under section 205 of the Act that "The award of treble damages in a willful case will not deprive the court of its discretion to grant restitution unless the amount awarded would under all the circumstances constitute an abuse of discretion." In that

case the United States advanced the argument which we denied that restitution to tenants could not be awarded for the period of violation for which treble or single damages were also awarded. We held that in an action by the United States under section 205 of the Act a judgment in favor of the plaintiff for damages was mandatory upon proof of the willful violation of the Act, and that "the matter of awarding or denying restitution in whole or in part is left under the law to the sound discretion of the District Courts." The rule stated has received approval in other Circuits. Moore v. United States, 5 Cir., 196 F.2d 906; McKittrick v. United States, 9 Cir., 197 F.2d 787; United States v. Carter, 10 Cir., 197 F.2d 903.

██ Under section 205 of the Act, as amended July 31, 1947, the District Court has discretion as to the amount of damages awarded the United States, but a judgment in favor of the United States is still mandatory, and the additional award of restitution to tenants overcharged remains a matter within its discretion. In this case the evidence showed beyond dispute that appellants were at all times aware of the maximum lawful rents chargeable to tenants of the housing accommodations. Both appellants were engaged in the real estate business. Appellant Robert J. Flynn had been so engaged for nine years. They not only demanded and received from Kaufman and Richter more than twice the lawful rent and required tenant Bien to pay $200 for the occupancy of the apartment at more than the lawful rent, but they attempted to hide the violations of the Act which they knew they were committing. See Sections 72 and 221, Housing Rent Regulations, 32 CFR, 2582, 2601, which deal with evasions of the Act through purported sales. On this record the District Court did not abuse its discretion by awarding treble damages to the United States and full restitution to the tenants while enjoining appellants from further violations of the Act.

██ That the complaint contained a suggestion that the claim of the United States for treble damages might be reduced by the amount of the judgment for restitution did not circumscribe or limit the court's discretion. Rule 54 of the Rules of Civil Procedure, 28 U.S.C.A. It was for the court on the record before it and not for the administrative agency representing the United States to determine the judgments and orders necessary to effect the purpose of the Act. It may be noted, however, that the judgment in this case is not opposed to the prayer of the complaint which, while suggesting that the judgment for the plaintiff might be reduced by the amount of restitution awarded the tenants, nevertheless, concluded with a prayer for all other relief to which plaintiff was entitled.

Affirmed.