HOWARD et al. v. LOCAL 74 OF THE WOOD, WIRE & METAL LATHERS, INTERNATIONAL UNION OF CHICAGO, ILL. AND VICINITY et al.

UNITED STATES
v.
EMPLOYING LATHERS ASS'N OF CHICAGO AND VICINITY
et al. (two cases).

UNITED STATES
v.
EMPLOYING PLASTERERS ASS'N OF CHICAGO et al. (two cases).

Nos. 53 C 125, 52 Cr 331, 52 C 1639, 52 Cr 332, 52 C 1640.

United States District Court,
N. D. Illinois, E. D.

July 20, 1953.

Reversed March 8, 1954.

See 74 S.Ct. 452.

388

Otto Kerner, Jr., U. S. Atty., Chicago, Ill., Willis Hotchkiss, E. Houston Harsha and Charles W. Houchins, of the Anti-Trust Division, Dept. of Justice, Moore, Wimbish & Leighton, Chicago, Ill., for plaintiffs.

Daniel D. Carmel, Nathan M. Cohen, Kirkland, Green, Fleming, Martin & Ellis, Mayer, Meyer, Austrian & Platt, Asher, Gubbins & Segal, Holland F. FlaHavan, Chicago, Ill., for defendants.

PERRY, District Judge.

All five causes under consideration present similar operations in the building trades of the Chicago area, which operations are alleged to violate the Sherman Act, 15 U S.C.A. §§ 1–7, 15 note. A summary analysis of the operations and business practice of the lathing industry can serve to present the operations of the plastering industry because they are similar. Since the legal question in both trades is identical, this discussion relative to the lathing industry is equally applicable to the plastering trade and one opinion will serve for all of the cases at bar.

The defendants, the Employing Lathers Association of Chicago and the labor union known as Local No. 74 of the Wood, Wire and Metal Lathers and its officers, Harry D. Follett and Edward D. Chouinard, were indicted in the case at bar for violation of Sections One and Two of the Sherman Act. All of the defendants were residents of the State of Illinois and conducted and carried on their business in the State of Illinois and the acts of conspiracies charged against them were all performed in the State of Illinois.

The indictment charges that there are thirty-six lathing contractors in the Chicago area, an area consisting of the counties of Cook, Du Page and Lake, all three of which are Illinois counties. All thirty-six of these contractors did about $8,000,000 worth of business in 1951. Sixteen of these lathing contractors, who were members of the defendant Employing Lathers Association of Chicago, did about $5,000,000 worth of work in 1951 in the said three Illinois counties, which amounted to about sixty per cent of all of the lathing business in those counties.

The indictment charged that generally contracts for lathing are executed by building contractors with plastering contractors who agree, under the terms of such contracts, to deliver lathing material and furnish labor for the lathing work required by the building contractor. The plastering contractor then enters into a sub-contract with the lathing contractor for the installation of lathing material in the building being constructed and said lathing material is furnished to said sub-contractors by the plastering contractor.

A major part of all lathing material used in lathing contracts in the said three Illinois counties is sold by manufacturers and dealers from other states to local material dealers in Illinois for resale in Illinois. They, in turn, sell said lathing materials to plastering contractors in Illinois, who then use such materials, or cause lathing contractors to use them, in constructing the work on buildings in Illinois, which buildings remain in Illinois and do not again enter into the stream of inter-state commerce.

There are three methods of delivery used by the building material suppliers who live and conduct their business in Illinois. Those methods are as follows:

First: A substantial amount of lathing materials is purchased from out-of-State sources by building material dealers in response and pursuant to prior orders placed with said dealers by plastering contractors, which is subsequently delivered to the plastering contractors and redelivered to the lathing contractors for installation.

Second: A substantial amount of lathing materials is purchased by plastering contractors from building material dealers in Illinois, who have, in turn, secured said material from out-of-State sources in order to meet regular, anticipated demands of plastering contractors. In other words, the purchase is made from building material dealers who stock pile plastering material.

Third: A substantial amount of lathing materials is purchased by plastering contractors from building material dealers who order the same from manufacturers and dealers and other sources outside of the State of Illinois, who, in turn, ship the same directly to the job site or place of business of said contractors in the said three Illinois counties for delivery to the lathing contractors for performance of lathing contracting work in said three Illinois counties, commonly known as the Chicago area. It is charged that said lathing materials, so sold, and installed in Illinois, flow in a continuous and uninterrupted stream from the points of origin in states other than the State of Illinois, to the job site for installation and use in the buildings and other structures in Illinois.

For the purpose of ruling upon this motion before the Court, all of the allegations stand admitted and every well pleaded fact is assumed to be true.

The plastering contractor is not charged with buying from out-of-State dealers but from building material dealers in Illinois, who are not named in the indictments or complaints herein.

The indictment alleges the existence of an agreement between the Association and Local 74, whereby lathing contractors are excluded from engaging in the area trade, unless they are first approved by Local 74. Such approval is dependent upon a five year union membership, which, in turn, is restricted and reduced pursuant to arbitrary racial and family relationship standards. Disapproved contractors cannot employ union lathers; approved lathing contractors are assigned to designated plastering contractors. It is alleged that this practice has suppressed competition among the lathing contractors in the area, and has effected a monopoly among the few approved lathing contractors, and that it is an unreasonable restraint upon trade and commerce.

There is no allegation of any effect of the alleged intrastate conspiracy upon the interstate market price of the building material involved. There is no allegation of any discrimination or anything that would cause a purchaser to buy building material in Wisconsin or in Chicago or in California. There is no allegation of fact of its effect upon the flow of materials into the State of Illinois. This is wholly a charge of local restraint and monopoly by local labor and a local lathers' association, all confined to three counties in the State of Illinois. The alleged restraints do not become associated with the building material or ultimate cost of buildings until after the building materials have been purchased and have come to a state of rest in the State of Illinois, so far as the stream of interstate commerce is concerned.

Whatever restraint there is occurs after all the buying and selling is completed. The flow of commerce is not unlike the flow of water and the statute is designed to prevent a break in the pipes through which interstate commerce flows across state lines and to the consumer. The statute is not designed to apply to the use the consumer makes of the articles of commerce after the consumer has completed his purchase, unless the consumer creates a new product

and a new stream of commerce that again crosses state boundary lines.

■ The Sherman Act was not intended by Congress to interfere with local affairs, even though they might be unfair and malicious and economically unsound. This indictment is brought specifically and is limited to and deals only with the Sherman Act. It is purely conjectural whether the practice with which the defendants are charged may remotely and indirectly affect the flow of commerce. It might be that it has reduced the number of buildings that are built in three counties in Illinois; it might be it has driven building and industry elsewhere; but that is not alleged in the indictment.

There is no allegation showing these defendants intended to burden interstate commerce by this alleged conspiracy. There is no allegation of fact that it does so burden interstate commerce.

If this were a situation where portable houses were being built, and there was an additional allegation that after the houses were built, instead of being attached to the real estate and becoming part and parcel of the local Illinois community, where all the acts are alleged to have been committed; and instead of being affixed to real estate remaining in Illinois they were loaded on box cars and sent to other states then there would be such interference with interstate commerce as would support these indictments and complaints herein.

■■ In the light of the authorities, it is the view of this Court that the indictments and complaints herein do not state an offense or cause of action under the anti-trust laws.

This Court cannot extend the law by interpretation, because, if this Court did extend it in this case, then every step in commerce from the beginning of manufacture, to and including the final consumption, and each and every act of every kind thereafter that might affect the quantity or price of articles of commerce would come under the Sherman Act. This Court is bound by the language of the Sherman Act and its sub-

sequent judicial interpretations. It would be presumptuous of a District Court to extend the statute in question to cover the facts alleged in the instant indictment by breaking a new path into the wilderness of commerce law, when the higher Courts have already circumscribed pathways that clearly indicate that the jurisdiction of this Court over interstate commerce ends at the same time and place where interstate commerce itself ends.

Appropriate orders in accord with this opinion will be entered in each case forthwith.