**UNITED GROCERS' COMPANY, a New York Corporation, Plaintiff,**

v.

**SAU–SEA F O O D S, Inc., and Ernest Schoenbrum and Abraham Kaplan, doing business as Shore Distributors, Defendants.**

United States District Court
S. D. New York.
March 22, 1957.

Manes, Sturim, Donovan & Laufer, New York City, for plaintiff.

Louis G. Greenfield, New York City, for defendants.

DIMOCK, District Judge.

According to an allegation of the complaint, this action arises under sections 13 and 15 of title 15 of the United States Code. Section 13 is that part of the Clayton Act which makes unlawful price discriminations the effect of which may be substantially to lessen competition, tend to create a monopoly or injure competition. Section 15 is the section which gives a private right of action for threefold damages. Defendants move that the complaint be dismissed under Rule 12 (b) (6), F.R.C.P., 28 U.S.C. and Rule 12(h) (2) on the grounds that it fails to state a claim under which relief can be granted and it appears that the Court lacks jurisdiction of the subject matter.

Plaintiff opposes the motion on the ground that a motion by defendant for summary judgment has already been denied. It was denied, however, on the ground that issues of fact were presented. It may well be that issues of fact were joined by the parties in affidavits submitted on the motion for summary judgment without there being any statement in the complaint of a claim on which relief could be granted

and without the Court's having jurisdiction of the subject matter. It does not appear from the Court's opinion that it accepted the complaint as defining plaintiff's charge. Indeed, in stating plaintiff's charge, the Court included material not alleged in the complaint and which must have been obtained from plaintiff's affidavits and a deposition of one of plaintiff's officers which were before the Court. The sufficiency of the allegations of the complaint have thus not been passed upon and the way is open for the prosecution of this motion to dismiss the complaint.

The complaint alleges that defendant corporation, with its principal place of business in Yonkers, New York, at all of the times therein mentioned, manufactured, packed, processed and distributed certain frozen food products, among which were frozen shrimp; that the two individual defendants, at all such times, were partners, with their principal place of business with defendant corporation, and were engaged in the sale and distribution of frozen foods.

Plaintiff, with its principal place of business in Brooklyn, New York, is alleged to be engaged in the business of distributing frozen food products to over 5,000 small independent retail food merchants who are in active competition with other larger units owned and operated by chain store corporations. The complaint says that plaintiff, at all the times therein mentioned, was and is in competition with other distributors of frozen food products and "is required to" purchase on equal terms with other buyers of the same class free from discriminatory trade practices; that it is essential to plaintiff's business that it be enabled to supply its said customers at prices low enough to permit competition with large chain store retail operators.

Plaintiff alleges that, from April 10, 1956, to July 10, 1956, it purchased from individual defendants, as the sales agents of corporate defendant, packages of frozen shrimp; that on or about May 21, 1956, "in accordance" with plaintiff's policy as aforementioned", it reduced its

price to its customers from $4.60 per dozen packages to $4.15 per dozen, which price was above cost plus a reasonable mark-up.

Then come paragraphs 11, 12 and 14 which contain every word in the complaint addressed to the statement of any legal wrong committed by defendants. They follow:

"11. That defendants, acting in concert with other persons engaged in the business of distributing frozen food products, on or after the 21st day of May, 1956, objected to the price at which plaintiff sold the said commodities and requested and demanded of plaintiff that it increase its price to the suggested resale price of $4.60 per dozen, to which demands and requests plaintiff refused to accede."

"12. That defendants, acting in concert and in furtherance of their conspiracy to create an unreasonable restraint of trade and to fix the resale price at which the said commodities would be sold by plaintiff, in violation of the aforesaid Section 13 of Title 15 of the United States Code Annotated, refused and still refuses to sell to plaintiff any of the aforedescribed products, and that plaintiff is and continues to be injured and damaged in its business by reason thereof."

"14. That the aforesaid products manufactured, processed, distributed and sold by defendants are products shipped and distributed in interstate commerce."

I cannot but think that the draftsman of these paragraphs was proceeding under the rule of Dioguardi v. Durning, 2 Cir., 139 F.2d 774, and was unfamiliar with the host of cases[1] which require that the complaint in an antitrust case

state a cause of action instead of merely stating a claim.

The pleader does not tell us who the other persons were with whom defendants acted in concert in objecting to plaintiff's reduced price and demanding that the suggested price be restored.

He next alleges that "defendants, acting in concert and in furtherance of their conspiracy to create an unreasonable restraint of trade and to fix the resale price at which the said commodities would be sold by plaintiff" refused to sell to plaintiff. This is the first time that it is charged that defendants acted in conspiracy.

No connection between defendants' conspiracy to restrain trade and fix prices, on the one hand, and the competitive position of plaintiff and plaintiff's customers on the other, is alleged or suggested. It is not alleged that defendants knew anything about plaintiff's competitive position.

We have the bare allegation that defendant corporation and defendants, its selling agents, acting in concert with other persons in the business, objected to plaintiff's price cut and demanded the restoration of a suggested price and that defendants, presumably after the refusal to restore the price, refused to sell to plaintiff in furtherance of a conspiracy between them to create an unreasonable restraint of trade and to fix the resale price. Construing the complaint with great liberality one might say that it alleged that defendant seller and defendants sales agents conspired to restrain trade and fix the resale price of the frozen shrimp that they sold and that, on plaintiff's refusal to adhere to the resale price that they suggested, they refused to sell to plaintiff. From this one might infer that defendants would sell to plaintiff on condition that plain-

1. E. g. Bader v. Zurich General Accident & Liability Ins. Co., D.C.S.D.N.Y., 12 F.R.D. 437; Dublin Distributors, Inc., v. Edward & John Burke, Limited, D.C. S.D.N.Y., 109 F.Supp. 125; New Dyckman Theatre Corp. v. Radio-Keith-Orph. Corp., D.C.S.D.N.Y., 16 F.R.D. 203; Baim & Blank, Inc., v. Warren-Connelly Co., D.C.S.D.N.Y., 19 F.R.D. 108. Even under the Dioguardi rule plaintiff would have been sailing very close to the wind. See United States v. Lamont, 2 Cir., 236 F.2d 312, 317.

tiff adhere to the resale price. So, if it were alleged that defendants sold to others without imposing that condition, it might be argued that defendants were "discriminating" in price between different purchasers contrary to section 13 relied on by plaintiff. There is, however, no suggestion in the complaint that any other purchaser is treated differently.

While there is thus no cause of action stated under section 13 on which plaintiff purports to rely, plaintiff's allegations, by employing the words "conspiracy to create an unreasonable restraint of trade", hint at some wrong under section 1, the Sherman Act, 15 U. S.C. § 1, which makes such conspiracy illegal.

As Mr. Justice Day said in Federal Trade Comm. v. Beech-Nut Co., 257 U.S. 441, 452, 42 S.Ct. 150, 154, 66 L.Ed. 307, "it is settled that in prosecutions under the Sherman Act a trader is not guilty of violating its terms who simply refuses to sell to others, and he may withhold his goods from those who will not sell them at the prices which he fixes for their resale." That is not the whole story, however. Mr. Justice Day went on, "He may not, consistently with the act, go beyond the exercise of this right, and by contracts or combinations, express or implied, unduly hinder or obstruct the free and natural flow of commerce in the channels of interstate trade." That latter statement raises the question before me: has plaintiff by alleging, in those bare words, a conspiracy between corporate defendant and its selling agents to "create an unreasonable restraint of trade and to fix the resale price at which the said commodities would be sold by plaintiff" sufficiently charged that defendants have gone beyond the mere refusal to sell to those who will not observe the suggested retail prices and have by contracts or combinations, express or implied, unduly hindered or obstructed the free and natural flow of commerce.

There is nothing in the pleading to suggest this except the words "in furtherance of their conspiracy to create an unreasonable restraint of trade". That is the most naked of conclusions and a conclusion in the language of the statute is insufficient as a pleading. Baim & Blank, Inc., v. Admiral Corporation, D.C.S.D.N.Y., 132 F.Supp. 412, and cases cited.

In another respect the complaint is deficient in stating a claim under the Federal antitrust acts. Its only reference to interstate commerce is paragraph 14 reading as follows:

"That the aforesaid products manufactured, processed, distributed and sold by defendants are products shipped and distributed in interstate commerce."

The fact that defendants distributed *some* of the frozen shrimp in interstate commerce would not be sufficient to bring under Federal jurisdiction their relations with plaintiff if none of the shrimp were distributed to plaintiff or to plaintiff's customers in interstate commerce. Can such a strong presumption in favor of the pleader be brought to bear as to permit the construction that *all* shrimp distributed by defendants are distributed in interstate commerce? It is conceivable that defendant corporation's processing plants are located in some state within which none are distributed. While the conclusory statement might thus be consistent with a state of affairs where all defendants' relations with plaintiff were interstate, conclusory allegations are not enough for a complaint under the antitrust laws.

It is regrettable that under our procedure a plaintiff can extemporize such an effusion as this complaint and by filing it in a public office compel the defendant to retain counsel and the court to spend the time of the public in attempting to supply by inference allegations which plaintiff, if it had facts to support them, could have actually set out in a small fraction of the time.

The motion to dismiss the complaint is granted.

In view of this disposition, plaintiff's motion to compel defendants to submit to examination is denied.