Julius NAGLER et al., Plaintiffs-Appellants,

v.

ADMIRAL CORPORATION et al., Defendants-Appellees.

No. 364, Docket 24249.

United States Court of Appeals Second Circuit.

Argued June 11, 1957.

Decided Oct. 2, 1957.

Arnold Malkan, New York City (Paul Lewin, New York City, on the brief), for plaintiffs-appellants.

George A. Raftery, of O'Brien, Driscoll & Raftery, New York City, for defendants-appellees Admiral Corp. and Admiral Corp. New York Distributing Division, Inc.

Donovan, Leisure, Newton & Irvine, New York City, for defendants-appellees Philco Corp. and Philco Distributors, Inc.

Weil, Gotshal & Manges, New York City, for defendant-appellee Davega Stores Corp.

Cravath, Swaine & Moore, New York City, for defendant-appellee Times Appliance Co., Inc.

Adelman & Shapiro, New York City, for defendant-appellee Warren-Connelly, Inc.

Moses Block, New York City, for defendant-appellee Maytag-Atlantic Co., Inc.

Samuel Spiegel, New York City, for defendants-appellees Roto Broil Corp. of America and Jay Kay Metal Specialties Corp.

William D. Friedmann, of O'Brien, Driscoll & Raftery, New York City, and Melville C. Williams, of Pope & Ballard, Chicago, Ill., on the brief, for defendants-appellees.

Before CLARK, Chief Judge, and CHASE and HINCKS, Circuit Judges.

CLARK, Chief Judge.

This is an antitrust and price-discrimination action for injunction and damages by thirteen retailers in the Greater New York area of radio, television, and electrical appliances. It is brought against twenty-six defendants, of whom twenty-four are "suppliers," i. e., manufacturers, wholesalers, and distributors, and two are retailers operating chain stores in this area. The case is founded upon the allegation that these two defendant-retailers, Davega Stores Corporation and Vim Television and Appliance Stores, Inc., received special price concessions from the supplier defendants. The complaint is in twenty-nine paragraphs and three counts, or "causes of action" as they are labeled. The first cause is for "Defendants' Discrimination Against Plaintiffs in Violation of the Robinson-Patman Act," 15 U.S.C. § 13; while the other causes, reincorporating the allegations of the first, are for violations of the Sherman Act, 15 U.S.C. §§ 1, 2. Ten of the defendants joined in a motion to dismiss for improper pleading under Fed.Rules Civ.Proc., rule 8(a) and (e), and for misjoinder of parties; alternatively they asked for relief under F.R. 10(b), 12(e) and (f), i. e., for separate statements as to each defendant, for a more definite statement, and for striking parts of the complaint. Other defendants have moved for more definite

statements; but such motions are not before us, nor have these defendants appeared as appellees. The court, in a substantial opinion, D.C.S.D.N.Y., 144 F. Supp. 772, granted dismissal on the grounds urged and dismissed the complaint as to all the defendants. This appeal followed.

The drastic remedy here granted for pleading errors is unusual, since outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts. See for recent expressions of the fundamental policy: Atwood v. Humble Oil & Refining Co., 5 Cir., 243 F.2d 885; Rennie & Laughlin, Inc. v. Chrysler Corp., 9 Cir., 242 F.2d 208, 213; Cooper v. R. J. Reynolds Tobacco Co., 1 Cir., 234 F.2d 170, and other cases cited below. And this has been true generally in both English and American law and legal history, for cases are not finally disposed of on mere points of pleading alone.[1] Courts naturally shrink from the injustice of denying legal rights to a litigant for the mistakes in technical form of his attorney. Moreover there are, or would be, serious questions of *res judicata;* and since this doctrine is two-edged, its application may well present problems for defendants as well as plaintiffs. Quite possibly those

defendants who have not sought the relief they have been given (and who are not here to support the grant) may have been motivated by doubts as to what they have won. For are the plaintiffs merely relegated to initiating a new action or are they permanently barred? Compare Griffin v. Griffin, 183 Va. 443, 32 S.E.2d 700, with Gould v. Evansville & C. R. Co., 91 U.S. 526, 23 L.Ed. 416; and see Lawlor v. National Screen Service Corp., 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122, and Von Moschzisker, Res Judicata, 38 Yale L.J. 299, 318–320. We are clear, therefore, that the case must go back for some less final disposition at least permitting the plaintiffs to amend. But because of their practical importance in routine litigation, we think some elaboration of both the pleading and the joinder issues is desirable.

It is true that antitrust litigation may be of wide scope and without a central point of attack, so that defense must be diffuse, prolonged, and costly. So many defense lawyers have strongly advocated more particularized pleading in this area of litigation;[2] and recently the judges in the court below have treated it as accepted law that some special pleading—the extent · is left unclear—is required in antitrust cases.[3] But it is quite clear

---

[1]. This history has been often recounted; see, e. g., Clark, Code Pleading 17–21, 56–58, 225–245 (2d Ed. 1947), and the address cited in note 3 infra. A vivid and classic critique of special pleading, occasioned by Baron Parke's technical rulings under the ill-fated Hilary Rules of 1834, is found in Serjeant Hayes' "Crogate's Case: A Dialogue in ye Shades on Special Pleading Reform"—a dialogue supposedly between Crogate of the famous case of that name and Baron Surrebutter (Baron Parke)—now reprinted in 9 Holdsworth, History of English Law 417 (2d Ed. 1938). So Justice Frankfurter, dissenting in Johnson. v. New York, N. H. & H. R. Co., 344 U.S. 48, 62, 73 S.Ct. 125, 132, 97 L.Ed. 77, thus summarizes:

"It has been said of the great Baron Parke: 'His fault was an almost superstitious reverence for the dark technicalities of special pleading, and the reforms introduced by the Common Law Procedure Acts of 1854 and 1855 occasioned

his resignation.' Sir James Parke, 15 D.N.B. 226."

[2]. For a recent able presentation of this point of view, see Armstrong, The Use of Pretrial and Discovery Rules: Expedition and Economy in Federal Civil Cases, 43 A.B.A.J. 693, 696 (1957), also criticizing current uses of discovery and pretrial.

[3]. See Clark, Special Pleading in the "Big Case"? 21 F.R.D. 45, an address at the Seminar on Long Cases in New York, Aug. 26–30, 1957, citing some dozen reported cases from the Southern District of New York. The most significant examples, besides the present case, are Baim & Blank, Inc. v. Warren-Connelly Co., D.C.S.D. N.Y., 19 F.R.D. 108, 109, specifically relied on by the judge below, and United Grocers' Co. v. Sau-Sea Foods, Inc., D.C. S.D.N.Y., 150 F.Supp. 267, 269. In the Baim & Blank case the judge granted a motion to dismiss, but with leave to amend, which led promptly to a new complaint,

that the federal rules contain no special exceptions for antitrust cases. When the rules were adopted there was considerable pressure for separate provisions in patent, copyright, and other allegedly special types of litigation. Such arguments did not prevail; instead there was adopted a uniform system for all cases [4] —one which nevertheless allows some discretion to the trial judge to require fuller disclosure in a particular case by more definite statement, F.R. 12(e), discovery and summary judgment, F.R. 26–35, 56, and pre-trial conference, F.R. 16. Perhaps the leading case making this clear is the oft-cited decision in Package Closure Corp. v. Sealright Co., 2 Cir., 141 F.2d 972, 978, where the late Judge Frank, speaking for the court, said: "It is urged by defendants that a stricter requirement as to a plaintiff's pleading in treble damage actions is necessary because of the expense often involved in such litigation. But in that respect such actions are not unique, for huge expense is involved, too, in many a patent infringement suit and in many a suit where jurisdiction rests on diversity of citizenship. To impose peculiarly stiff requirements in treble damage suits will be to frustrate the Congressional intent. * * * We see no reason whatever to believe that the Supreme Court intended its liberal rules governing pleadings to be inapplicable to a suit for treble damages." And he goes on to point out that

if "the defendants, before trial, desire more detailed information from plaintiff, they can seek it by interrogatories, deposition or discovery." 141 F.2d 972, 979.

To the same general effect is United States v. Employing Plasterers Ass'n of Chicago, 347 U.S. 186, 74 S.Ct. 452, 98 L. Ed. 618, where the Supreme Court reversed the dismissal of a complaint, Howard v. Local 74 of the Wood, Wire & Metal Lathers, International Union of Chicago, D.C.N.D.Ill., 118 F.Supp. 387, for failure to state a cause of action for relief under the Sherman Act. As the opinions above and below show, the complaint was most broad and general. Speaking for the Court, Mr. Justice Black said, 347 U.S. 186, 189, 74 S.Ct. 452, 454: "The Government's complaint may be too long and too detailed in view of the modern practice looking to simplicity and reasonable brevity in pleading. It does not charge too little. It includes every essential to show a violation of the Sherman Act. And where a bona fide complaint is filed that charges every element necessary to recover, summary dismissal of a civil case for failure to set out evidential facts can seldom be justified. If a party needs more facts, it has a right to call for them under Rule 12(e) of the Federal Rules of Civil Procedure. And any time a claim is frivolous an expensive full dress trial can be avoided by invoking the summary judg-

doubled in size, and some attempt at formal separation of the claims of different plaintiffs, with no appreciable gain in information. Decision on a motion to strike this complaint has been stayed by stipulation pending determination of the present appeal. Hence no real progress has been made in the 2⅓ years the case has pended. In the United Grocers' Co. case, the motion to dismiss was granted; but the judgment was soon reopened on plaintiffs' motion to permit them to move for leave to file an amended complaint. Later another judge granted such leave, D.C. S.D.N.Y., 151 F.Supp. 760. An amended complaint was filed, again of doubled size, but of doubtful informative value; this was met by a most lengthy motion to strike, which was denied by still another judge. Eventually an answer was filed,

after the greater part of a year had been wasted by five motions before four different judges, but without progress toward adjudication. All the cases noted in the address, except the one here on appeal, provided for amendment of the complaint; but no gain in information has yet been seen on any repleading.

4. See, e. g., F.R. 81(a); Copyright Rule of Practice 1, 307 U.S. 652, 17 U.S.C. following § 101; and the Federal Forms, such as Form 17—Complaint for Infringement of Copyright and Unfair Competition. So the recently adopted Rule 71A, for the Condemnation of Property, in subdivision (c) has some special requirements for describing the property, but otherwise follows the general practice, see subdivision (a).

**324**

ment procedure under Rule 56." A like ruling is made in the companion case of United States v. Employing Lathers Ass'n of Chicago, 347 U.S. 198, 200, 74 S.Ct. 135, 98 L.Ed. 627. And in Radovich v. National Football League, 352 U. S. 445, 453, 454, 77 S.Ct. 390, 1 L.Ed.2d 456, the Court, in upholding a broad general complaint, stressed that it should not add pleading requirements to burden the private antitrust litigant favored by Congress beyond what is specifically set forth in the antitrust laws. Other cases of like tenor are cited in the footnote.[5]

In asserting a special rule of pleading for antitrust cases, our brothers below have in terms rejected the "modern 'notice' theory of pleading" as here insufficient[6] and said that an antitrust complaint must "state a cause of action instead of merely stating a claim."[7] But while these essentially nebulous concepts often creep into pleading discussions, they are no part of the rules themselves, but were in fact rejected for more precise formulations. It is well to go back to the rules themselves and their intended purpose. To this end we accept as definitive the precise statement formulated by the Advisory Committee in the light of both purpose and experience to answer criticisms based on some dispute in the interpretation of the rules. This appears in the Report of Proposed Amendments, October 1955, pp. 18, 19, and Preliminary Draft, May 1954, pp. 8, 9, as a note explanatory of F.R. 8(a)

(2) and the Committee's decision to recommend the retention of that rule in its present form. The following extracts therefrom are directly pertinent to our present discussion: "The intent and effect of the rules is to permit the claim to be stated in general terms; the rules are designed to discourage battles over mere form of statement and to sweep away the needless controversies which the codes permitted that served either to delay trial on the merits or to prevent a party from having a trial because of mistakes in statement. * * * It is accordingly the opinion of the Advisory Committee that, as it stands, the rule adequately sets forth the characteristics of good pleading; does away with the confusion resulting from the use of 'facts' and 'cause of action'; and requires the pleader to disclose adequate information as the basis of his claim for relief as distinguished from a bare averment that he wants relief and is entitled to it."

Turning to the complaint before us, we remark that in outward form at least it is an imposing document consisting of twelve or more printed pages. Both sides purport to rely on the pleading admonitions in some of the district court cases we have referred to:[8] the defendants to show, as the district court indeed held, that the plaintiffs have not heeded these warnings, and the plaintiffs to claim that they have and have expanded their allegations accordingly. At any

5. Darnell v. Markwood, 95 U.S.App.D.C. 111, 220 F.2d 374; Louisiana Farmers' Protective Union v. Great Atlantic & Pacific Tea Co. of America, 8 Cir., 131 F.2d 419; Cooper v. R. J. Reynolds Tobacco Co., 1 Cir., 234 F.2d 170; Byrd v. Bates, 5 Cir., 220 F.2d 480; Atwood v. Humble Oil & Refining Co., 5 Cir., 243 F.2d 885; Sidebotham v. Robison, 9 Cir., 216 F.2d 816. This principle has not been questioned even in cases (perhaps now somewhat doubtful in view of the precedent cited in the text) requiring the pleading of injury to the public interest, interstate commerce, etc., such as Feddersen Motors v. Ward, 10 Cir., 180 F. 2d 519, 522; Kinnear-Weed Corp. v. Humble Oil & Refining Co., 5 Cir., 214 F.2d 891, certiorari denied 348 U.S. 912,

75 S.Ct. 292, 99 L.Ed. 715; Beegle v. Thomson, 7 Cir., 138 F.2d 875, 881, certiorari denied Beegle v. Thompson, 322 U.S. 743, 64 S.Ct. 1143, 88 L.Ed. 1576; Black & Yates v. Mahogany Ass'n, 3 Cir., 129 F.2d 227, 148 A.L.R. 841, certiorari denied Mahogany Ass'n v. Black & Yates, 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539. See also Resolutions Adopted at Seminar on Long Cases in New York, Aug. 26–30, 1957, No. 7.

6. Baim & Blank, Inc. v. Warren-Connelly Co., D.C.S.D.N.Y., 19 F.R.D. 108, 109.

7. United Grocers' Co. v. Sau-Sea Foods, Inc., D.C.S.D.N.Y., 150 F.Supp. 267, 269.

8. See cases referred to in notes 3, 6, and 7, supra.

rate, we have one result, which seems to be invariable when detailed pleading is stressed, namely, a vast increase in verbiage. The complaint is filled with the pleading of conclusions of both fact and law; it is far from that lean and terse allegation in sequence of events as they have happened which we have stressed.[9] But we are not conducting exercises in pleading; we must look beyond the mere mountain of words to the meaning sought to be conveyed. So looking we can have no doubt that plaintiffs say the supplier defendants have given their favored customers Vim and Davega price discounts and other special favors (listed in some detail) which have lost sales to the plaintiffs, destroyed their capacity to compete, and forced some of them out of business.

In testing whether this is a sufficient statement of claim upon which to base a lawsuit, we ought practically to consider the alternatives, both what can be expected and asked of antitrust plaintiffs and what can be accomplished by compulsive orders. Here seems to be the rock upon which attempts below to achieve more particularized pleading have definitely foundered; for the judges' directions double the bulk without increasing enlightenment, while they delay the cause and exhaust the time of several judges.[10] So in this case the district judge has stated several requirements which would seem either not feasible or not such as to advance the case toward adjudication. Most of them relate to details either not pertinent to the legal point or covered generally, such as addresses and location of defendants, the

territory involved (the "Greater New York area"), the time (necessarily the period permitted by the applicable statutes of limitation to the date of filing of the complaint), and so on. Perhaps the nub of all this is the conclusion that by "stating the claims of all the plaintiffs against all the defendants collectively, they have deprived the defendants of notice of the precise nature of the claims that each will be required to meet." But we note that a similar order in a companion case has resulted only in a complaint doubled in length, with separate paragraphs of iteration in general form of action by individual plaintiffs against individual defendants—a formal compliance, with no gain in useful information that we can perceive.[11]

It is to be noted that this complaint meets certain difficulties sometimes adverted to in other cases, such as allegations as to interstate commerce or public injury occasionally found wanting.[12] It does lack a direct allegation that the defendants conspired together, although it assumes the defendants' "combinations and conspiracies" and the resulting damage to plaintiffs. But as to this the trier of facts may draw an inference of agreement or concerted action from the "conscious parallelism" of the defendants' acts of price cutting and the like, as the Supreme Court recognizes. Theatre Enterprises v. Paramount Film Distributing Corp., 346 U.S. 537, 541, 74 S.Ct. 257, 98 L.Ed. 273. So in dealing with an antitrust complaint of somewhat similar nature, Judge Smith in an informed decision refused a dismissal because of lack of a clear-cut assertion of

---

9. "A simple statement in sequence of the events which have transpired, coupled with a direct claim by way of demand for judgment of what the plaintiff expects and hopes to recover, is a measure of clarity and safety; and even the demand for judgment loses its restrictive nature when the parties are at issue, for particular legal theories of counsel yield to the court's duty to grant the relief to which the prevailing party is entitled, whether demanded or not." Gins v. Mauser Plumbing Supply Co., 2 Cir., 148 F.2d 974, 976, citing F.R. 54(c) and cases. See

also Siegelman v. Cunard White Star Limited, 2 Cir., 221 F.2d 189, 196.

10. See examples in note 3 supra. The early assignment of a potentially protracted case to a single judge—as recommended by the authorities noted later in the text—would avoid this waste.

11. Baim & Blank, Inc. v. Warren-Connelly Co., D.C.S.D.N.Y., 19 F.R.D. 108; and see also United Grocers' Co. v. Sau-Sea Foods, Inc., D.C.S.D.N.Y., 150 F.Supp. 267.

12. See cases cited in note 5 supra.

concerted activity, since the plaintiff could rest on this conscious parallelism among the defendants. Hathaway Motors v. General Motors Corp., D.C.Conn., 18 F.R.D. 283. On the other branch of the case, the Robinson-Patman Act makes price discrimination illegal unless it is within one of the exceptions stated in the statute, 15 U.S.C. § 13. But the burden of bringing the case within one of these exceptions is definitely upon the defendants. F. T. C. v. Morton Salt Co., 334 U.S. 37, 45, 68 S.Ct. 822, 92 L.Ed. 1196, 1 A.L.R.2d 260; Ruberoid Co. v. F. T. C., 2 Cir., 189 F.2d 893, 895, s. c. 191 F.2d 294, affirmed F. T. C. v. Ruberoid Co., 343 U.S. 470, 72 S.Ct. 800, 96 L.Ed. 1081. It would seem therefore that the plaintiffs have set forth a prima facie case which, if proved, will force the defendants to their proof in rebuttal.

In criticizing these complaints the trial judges have tended to see willful violations of precise instructions. We doubt if this is a profitable approach in any event; however willful seeming, lawyers must represent their clients in what they conceive the most effective way in the light of their knowledge, which must include that neither English nor American experience lends support to mere pleadings as a substitute for trial. But as we try to visualize practical substitutes we question the adverse implication. For actually this demand seems to come to a call for specific instances, as that Admiral made such and such a discount sale of specified goods to Davega on a particular day at a particular place. Anything short of this, as the practice below is demonstrating, will permit of the vagueness the judges are finding troublesome. And yet such pleading of the evidence is surely not required and is on the whole undesirable. It is a matter for the discovery process, not for allegations of detail in the complaint. The complaint should not be burdened with possibly hundreds of specific instances; and if it were, it would be comparatively meaningless at trial where the parties could adduce further pertinent evidence if discovered. They can hardly know all their evidence, down to the last detail, long in advance of trial.

The sad truth is that these cases are likely to prove laborious in any event and that there is no real substitute for trial, although pre-trial conferences and orders may greatly speed the result.[13] But a considerable part of federal litigation is of a lengthy and burdensome nature and we are not justified in frowning on a Congressional policy so definitely cherished as is this, a policy which is, after all, the cause of our troubles. And while as appellate judges we would help our brethren at the crucial trial stage where we could, the experience, as generally noted,[14] shows that attempts at special pleading are definitely not the remedy. This has a bearing on the alternative relief here asked, that of a more definite statement under F.R. 12(e). Trial judges should of course have some discretion to attempt improvements in particular pleadings before them where they have the available time and energy to do so. Yet it seems clear that "motions for particulars will not serve that purpose" of particularizing antitrust issues, Procedure in Anti-Trust and Other Protracted Cases, A Report Adopted by the Judicial Conference of the United States, September 26, 1951, page 10, and "Orders for more definite statements ordinarily do not result in furtherance of the solution of the big case." Resolutions Adopted at Seminar on Long Cases in New York, August 26–30, 1957, No. 8. The real solution—so far as there is one short of trial—would appear to be that recommended in these important and informed authorities, viz., continuing pre-

---

13. *Inter alia*, they might provide for the limitation of proof by plaintiff to establish only the prima facie case noted above in the text; this in turn would somewhat control the extent of the answering evidence.

14. See the particular references in note 3 supra, and the more general ones in note 1 supra.

trial conferences under the direction of a single judge who may thus avoid the duplicating efforts of various judges we have noted above.

■ The remaining issue involving joinder has two aspects, the striking of the allegations that the plaintiffs represent a class under F.R. 23(a) (3) and the holding that there is no common question of either law or fact supporting joinder of the defendants under F.R. 20 (a). We are constrained to hold the court in error on both aspects. As to the first, we think the court has ascribed both too much and too little weight to this class-suit provision—too much in holding it so troublesome as to require striking at this stage and too little as destroying whatever efficacy it may have in a particular case. This is the form of class suit which at times is given the opprobrious epithet of "spurious" to distinguish it from the truly representative actions, for it is in actual effect really little more than an invitation to non-parties closely interested to intervene. As we have said of this provision: "It stands as an invitation to others affected to join in the battle and an admonition to the court to proceed with proper circumspection in creating a precedent which may actually affect non-parties, even if not legally *res judicata* as to them. Beyond this, as we in common with other courts have pointed out, it cannot make the case of the claimed representatives stronger, or give them rights they would not have of their own strength, or affect legally the rights or obligations of those who do not intervene." All American Airways v. Elderd, 2 Cir., 209 F.2d 247, 248, 249. This was said in holding an order partially dismissing counterclaims to the extent that they were based on this rule as "only an order for prettifying the pleadings in the eyes of the trial judge" and hence not appealable. See also Oppenheimer v. F. J. Young & Co., 2 Cir., 144 F.2d 387; Bascom Launder Corp. v. Telecoin Corp., 2 Cir., 204 F.2d 331, 336, certiorari denied 345 U.S. 994, 73 S.Ct. 1133, 97 L.Ed. 1401; Kainz v. Anheuser-Busch, Inc., 7

Cir., 194 F.2d 737, certiorari denied Anheuser-Busch, Inc. v. Kainz, 344 U.S. 820, 73 S.Ct. 17, 97 L.Ed. 638. It is difficult to see what harm the allegations do, since they will serve no function if the invitation is accepted by no one. On the other hand, they may serve a helpful function in leading to the consideration of substantially similar problems all at once. This is the function, too, of the joinder provisions to which we now turn.

■ F.R. 20(a) provides: "All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action." This is a correlative provision to the similar one for the joinder of plaintiffs. The rule also provides that neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded, that judgment may be given for or against individual parties according to their respective rights and duties, and—in subdivision (b)—that the court may order separate trials or otherwise protect the parties and prevent delay or prejudice. Originating in modern English procedure, it came to this country by way of the New York Civil Practice Act of 1921 and has been widely adopted, as in the codes of such states as California, Connecticut, Illinois, and Pennsylvania, as well as in the fifteen jurisdictions which have adopted the federal rules *in toto*. It substitutes principles of trial convenience and efficiency for rigid rules of interrelationship of parties. Its range can be seen from an early and famous case in New York, Akely v. Kinnicutt, 1924, 238 N.Y. 466, 144 N.E. 682, upholding the joinder of 193 plaintiffs seeking individual damages caused by reliance upon a fraudulent stock prospectus. The same concept is stated, perhaps even more directly in the provision of F.R. 42(a) for consolidation of actions or joint hearings or trial "When actions in-

volving a common question of law or fact are pending before the court." This provision is important here because the plaintiffs in their complaint state their intention to ask for consolidation of this case with another now pending before the district court.[15] Its broad scope is shown by cases such as Gillette Motor Transport v. Northern Oklahoma Butane Co., 10 Cir., 179 F.2d 711; Plough v. Baltimore & O. R. Co., 2 Cir., 172 F.2d 396, certiorari denied 337 U.S. 940, 69 S. Ct. 1518, 93 L.Ed. 1745; McAfoos v. Canadian Pac. Steamships, Ltd., 2 Cir., 243 F.2d 270, 274.

■ There are various suggestions of common questions of fact or law which we need not separately explore, since we think that in any event the suggestion of concerted activity because of the "conscious parallelism" of the defendants' acts affords a clear ground of joinder without need of more. And if joinder is permissible on facts alleged, it cannot and should not be restricted to certain theories of relief only, as, for example, restraint of trade as opposed to price discrimination, when the facts alleged support both theories. For it is clear law that it is the duty of the court to grant the relief which the facts before it require; the legal theories which the parties may have suggested or relied on may be of help to the court, but do not control.[16] Hence there is no proper basis for distinguishing here between Sherman and Robinson-Patman claims, although the plaintiffs may have indulged in unnecessary and repetitious separate statements of "causes of action."

This problem necessarily dovetails into that of pleading first discussed, and the over-all considerations there pertinent have significance here also. Under set-tled Congressional policy, acts of discriminatory price cutting are bound to give rise to a multitude of damage claims which federal courts cannot push aside. How shall they be handled—by fragmentation or by mass attack, so to speak? Modern procedure favors the trial and disposition of similar cases together as a matter of court efficiency; this is shown by the popularity of these extensive joinder provisions, the most widely accepted of all pleading reforms. This case would seem to promise gain in the employment, not repudiation, of the authority given. To force on this already overcrowded court the necessity of separate actions— with accompanying pleading, discovery, pre-trial, and trial activities—in all the various combinations possible among thirteen plaintiffs and twenty-six defendants, not to speak of other causes which could be consolidated with this, would be quite intolerable. On the other hand, at this preliminary stage joinder seems to have attractive possibilities. Conceivably it may lead to a fairly expeditious settlement of all issues and at the longest it calls for trial work of perhaps difficult, but not impossible, character for an experienced trial judge. And there is always at hand the authority to order separate trials of particular issues. We believe the reversal and remand we find required by law will lead eventually to more definite and affirmative results than the course embarked on by the court below. As our discussion shows, we do not think amendment of the complaint necessary and are not making its reinstatement contingent thereon. So far as the appeal affects defendant The Wilcox-Gay Corporation, it is dismissed by consent as per affidavit on file. Otherwise the action is

Reversed and remanded.

15. Baim & Blank, Inc. v. Warren-Connelly Co., D.C.S.D.N.Y., 19 F.R.D. 108.

16. See cases cited in note 9 supra and the many cases applying F.R. 54(c); Bowles v. J. J. Schmitt & Co., 2 Cir., 170 F.2d 617; Couto v. United Fruit Co., 2 Cir., 203 F.2d 456; Flynn v. United States, 8 Cir., 205 F.2d 756; Clark, Code Pleading 265-273 (2d Ed. 1947).